In the Matter of Sgt. Gerald L. LEWINE, #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, Petitioner,

v.

Melvin LAIRD, Secretary of Defense, et al., Respondents.

No. 71-2487-EC.

United States District Court, C. D. California.

Nov. 24, 1971.

Kenneth Cloke, Hollywood, Cal., for petitioner.

Robert L. Meyer, U. S. Atty., Frederick M. Brosio, Jr., and John L. Guth, Asst. U. S. Attys., Los Angeles, Cal., for respondents.

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

CRARY, District Judge.

Petitioner is presently on active duty in the United States Air Force on a four-year enlistment which commenced April 11, 1969. On October 15, 1971, he filed a petition for Writ of Habeas Corpus to effect his discharge from the Air Force on the grounds he is a conscientious objector. This Court has jurisdiction under the provisions of 28 U.S.C. § 2241. The petitioner and his immediate commander are within the territorial jurisdiction of this Court.

Following basic training at Lackland Air Force Base, Texas, he was assigned to Vandenberg Air Force Base in June, 1969. Thereafter, on November 18, 1969, petitioner applied for and received permission to attend the University of Pittsburgh on a permissive temporary duty status during the period January 6, 1970, to April 17, 1970. His application for University study was made pursuant to "Operation Bootstrap", a program under which petitioner could attend college full time while drawing his military pay and allowances, on his agreement that he would serve three days in the military for each day on temporary duty at the University, following the completion of that temporary duty. Such obligated service was to run concurrently with his enlistment obligation.

Following this schooling, petitioner returned to duty at Vandenberg where, on May 21, 1970, he again sought and secured permission to attend the University of Pittsburgh to complete his course of education and obtain his degree. Upon the same agreement and conditions above recited, petitioner again attended the University from September 3 to December 24, 1970, and from January 4 to April 17, 1971. During the vacation break, petitioner remained on temporary duty status.

During his last semester and commencing in February, 1971, petitioner prepared his application for discharge as a conscientious objector and gathered a number of letters and statements of relatives and friends to support his application. The earliest dated letter was March 5, 1971.

The petitioner testified at the Order to Show Cause hearing that his views as a conscientious objector started to crystallize after he entered the military service and before he went to the University of Pittsburgh in January, 1970, and that he made his decision to seek a discharge after returning to the University the second time and in February, 1971. It is to be noted that he continued

his schooling at the expense of the Government, and under the express agreement that he would give three days military service for each day in school on temporary duty, for a period of approximately two months after he asserts he became a conscientious objector and until he finished college and received his degree on or about April 17, 1971. He filed his application for discharge on April 20, 1971.

■ The beliefs required, as a matter of law and regulations, to establish one as a conscientious objector are common knowledge, particularly among those contemplating applying for conscientious objector status. Every young man, in or out of the Armed Forces, has every right to familiarize himself with the various conditions, beliefs, and so forth, which disqualify him for military service or avoid the necessity of his performing such service. It is not difficult to make the necessary allegations to state a prima facie case of conscientious objection. If a prima facie case is made by an applicant, then the test of sincerity and sufficiency of the record is considered by the authorities involved, in this case by the Air Force. When the alleged beliefs are asserted to be short-lived and after one is in the military service, as in the instant case, they bear more rigid scrutiny than when it appears the conscientious objection is based on long-standing religious training and beliefs.

Pursuant to the provisions of Air Force Regulation (AFR) 35–24, the regulation governing inservice conscientious objector applications, petitioner was interviewed by the Vandenberg Air Force Base installation Chaplain on May 6, 1971. [Page 10, Transcript of Administrative Record.]

The Chaplain states the petitioner " * * * arrived at his position over a period of years, including his years in the military." and that he has more confidence in the sincerity of a position so reached. The Chaplain goes on to say he is satisfied with petitioner's candor and sincerity and that he "strongly" recommends favorable consideration to petitioner's request.

It appears from the record that the Chaplain is in error in his conclusion that petitioner arrived at his position over any period beyond his enlistment. The petitioner's statement, appearing on page 9 of the Transcript of Administrative Record, states that he did not apply for conscientious objector status before entering on active duty "because I simply was not a conscientious objector at that time." He goes on to say that "This is due to the fact that, at that time, my moral and ethical objections to war and killing had not yet surfaced, let alone developed. Prior to my enlistment, there were few things further from my mind." Petitioner further states, with regard to the development of his conscientious objection: "I remember quite well how I felt when I received my draft notice. My little dream world fell apart. But in a way, I welcomed the challenge. My grades were poor and I was tired of my job. After a quick consultation with the Air Force recruiter and my fiancee, I enlisted in the Air Force. Though I hated every minute of basic training, that was the point at which I began to change." [Pg. 19, Tr. of Adm.R.]

In reply to paragraph 4.c of his application, petitioner says: "As previously explained, I have arrived at my convictions myself through my personal experiences and discussions with numerous persons. I rely solely upon myself and my conscience for matters relating to my convictions." [Pg. 21, Tr. of Adm.R.]

The O–3 Officer (Hearing Officer) interviewed the petitioner on May 28, 1971, as required by the regulations. In his report dated June 1, 1971 (pp. 7–8, Tr.Adm.R.), he observes that he concludes the petitioner is sincere regarding his objections to war and killing and his personal inability to participate in violence. The Hearing Officer goes on to say in his report: "Although I do not question Sgt. Lewine's sincerity regarding his personal participation in violence, I am not convinced this same sincerity applies to his inability to work as a non-

combatant. Reference paragraph 4.d of his information sheet submitted IAW Atch 1, AFR 35–24. Sgt. Lewine admits there are occasions when violence is necessary although he would not personally engage in violence. Also, *during my hearing with Sgt. Lewine I questioned him on this point.* When I reminded him of this statement in his application, he acknowledged he had made it and stated that that might be all right for someone else but he personally could not participate in violence." [Emphasis added.] It is to be noted that on May 28, 1971, a matter of months following the alleged crystallization of his conscientious objection, the petitioner states that violence might be all right for someone else but that he personally could not participate in violence.

The petitioner's Commanding Officer, after three interviews with petitioner following his return from the University, reported his concurrence with the views of the Hearing Officer and recommended disapproval of the application. [Page 4, Tr.Adm.R.]

The Commanding General concluded from the record that petitioner's claim as a conscientious objector " * * * is based on a personal dissatisfaction with his military duties and a set of standards tailored to his own liking." He concurred in the recommendation of the Commanding Officer and Hearing Officer that Sgt. Lewine's application for discharge be denied. [P. 5, Tr.Adm.R.]

Major Broschat, Directorate of Personnel Program Actions, acting for the Chief of Staff of the Air Force, states in his report that the petitioner's application is not favorably considered, "Since Sergeant Lewine failed to provide adequate documentary information to establish that he is opposed to all wars, when his views were fixed, or that his beliefs were so intense as to give him no rest or peace of mind as long as he remains in the Air Force." (Page 3, Tr.Adm.R.]

The issue before the Court is whether there is a basis in fact for the determination that petitioner was *not sincere* in his claim that he is a conscientious objector. One reason for insincerity urged by the Government is that petitioner is insincere in his contention that he is opposed to noncombatant service. If so, he is not a conscientious objector because Section 1622.14 of Title 32, C.F.R., provides:

"In Class 1–O shall be placed every registrant who would have been classified in Class 1–A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and to be conscientiously opposed to participation in both combatant *and noncombatant* training and service in the armed forces." [Emphasis added.]

█ The petitioner relies on the case of Silberberg v. Willis, 420 F.2d 662 (1 C.A.1970), as supporting his position. In that case, the Court of Appeals observes, at page 664, in referring to the District Court's ruling:

"The court held that the record contained no basis for questioning his sincerity, and 'no substantial evidence supporting the military determination that petitioner was not, within the meaning of the Army's own regulation, a conscientious objector,' and that hence he could not be required to perform combatant service."

Thus the court found that the petitioner was a conscientious objector and entitled to discharge and that the trial court was in error in ruling that the Army had the option of discharging him or assigning him to noncombatant duty. If the petitioner in the instant case is determined to be a conscientious objector, within the law and regulations, then he is entitled to discharge. However, before he may be said to be a conscientious objector he must establish that he is sincere in his position that he not only opposes all wars but opposes serving in a noncombatant capacity. The mere fact he states in his application he opposes service in noncombatant duty does not, of course, satisfy the requirement he must prove that he is sincere in his position.

The Court in the Silberberg case, supra, stated:

"* * * we discover no support for a finding that appellant was not conscientiously opposed to noncombatant duty within the service." [Page 665.]

In that case, the petitioner's application was approved by the various persons who considered it, under the regulations, until it reached the Selective Service System, where it had been sent for an advisory opinion. An assistant to General Hershey disapproved the application without stating his reasons therefor.

As to the Army interviewers who passed on Silberberg's application, the Court states:

"* * * while the three Army interviewers do not refer specifically to his objection to noncombatant duty, they do not suggest any reason to doubt the existence of such an objection."

The Court in Silberberg also observes that the Department of Defense Directive 1300.6 "provides that standards for classification '1–O', or '1–A–0' within the military service, shall be the same as those used by the Selective Service System. ¶ IV(B) (3)(b). Thus, the 1–A–O classification applies to a person who 'by reason of religious training and belief, is conscientiously opposed to participation in war in any form.' Selective Service Act of 1967, 50 U.S.C.A. App. § 456(j). The 1–O classification applies to a person who meets this test and additionally, is 'conscientiously opposed to participation in * * * noncombatant service.'" [Page 664.]

The District Court having found the petitioner Silberberg to be a conscientious objector and there being "* * * no support for a finding that appellant was not conscientiously opposed to noncombatant duty within the service", the Court of Appeals held the petitioner was entitled to a discharge.

▮ In the case at bar, the Court finds that there are inconsistencies in the petitioner's statements and actions which are deemed to constitute a basis in fact in support of the finding of the Air Force that the petitioner is not a conscientious objector. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; United States v. Andersen, 9 Cir., 447 F. 2d 1063 at 1066–1067.

▮ In ruling on the within petition, the Court must review the entire record considered by the Air Force and determine whether it contains the required basis in fact to support the disapproval by the Air Force of petitioner's application. Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

Sincerity and veracity of the petitioner are the principal issues and "any fact which casts doubt on the veracity of the registrant is relevant." Witmer v. United States, supra, 348 U.S. pp. 381–382, 75 S.Ct. p. 396.

## INCONSISTENCIES

The inconsistencies referred to above are as follows:

1. In paragraph 4.b of his application, petitioner is asked to explain "how, when and from whom or from what source you received the training and acquired the belief that is the basis of your claim." In reply he states, in part: "My father is and always has been one of the most peaceful and moral persons I have ever known. Most of the feelings I have today concerning my beliefs are an extension of his beliefs, *though he never once told me them*. * * * I feel that his actions, more than any other experiences have influenced my life." [Emphasis added.] Although petitioner says that his father never once told him of his beliefs, the father, speaking in the third person, says in his letter to petitioner's Commanding Officer (p. 33, Tr.Adm.R.): "A generation has passed since Gerald's father left the jungles. A generation in which *he taught his children to abhor war, killing and brutality in any form*. He taught that if we are to be a peaceful nation, we must first be peaceful individuals. To be this type of individual at times takes more old-fashioned guts than it takes to be a superpatriot. Gerald's father then,

was the motivating factor in his becoming a conscientious objector." [Emphasis added.]

In answering paragraph 4.c of the application, which requests that the applicant "Give the name and present address of the person upon whom you rely most for moral, ethical, religious guidance in matters of conviction relative to your claim", petitioner states: "As previously explained, I have arrived at my convictions myself through my personal experiences and discussions with numerous persons. I rely solely upon myself and my conscience for matters relating to my convictions." Petitioner's statements in paragraph 4.c, supra, are certainly inconsistent with those of himself, noted above, and his father, whose letter he attached to his application as supporting his position.

2. The above and other statements of the petitioner in his application, and supporting letters, indicating the gradual development of his conscientious objector beliefs over the years before his enlistment, are also inconsistent with his assertions (as quoted above) that he did "not apply for C.O. status prior to entry on active duty because I simply was not a conscientious objector at that time. * * even if moral and ethical objections had been recognized at that time to obtain C.O. status, I still would not have applied. * * * due to the fact that, at that time, my moral and ethical objections to war had not yet surfaced, let alone developed. Prior to my enlistment, there were few things further from my mind." [Page 9, Tr.Adm.R.]

3. The letter dated March 25th from Mr. Craig D. Perry, attached to the application, states: "The subject of war and killing didn't come up very often though, until Jerry was faced with the decision of being drafted or volunteering for military service." After stating that he believed petitioner did not seek conscientious objector status at that time because of "unsureness", Mr. Perry says: "After his return from basic training and even more so after having spent over a year at his Vandenberg post, he came to

regret that decision." The letter did indicate that by the time petitioner returned to the University of Pittsburgh in September, 1970, which was after he had been on duty at Vandenberg "over a year", he regretted that he had not applied for conscientious objector status before going into the Service. It would appear from Mr. Perry's letter that the petitioner was aware of his conscientious objector beliefs before returning to the University in September, 1970, which is inconsistent with the petitioner's contentions.

4. Mr. Paul R. Heller, a college roommate in 1967 and 1968, wrote a letter, which petitioner submitted with his application, in which he says: "When faced with the prospect of entering military service in early 1969, Mr. Lewine began to reflect more deeply on the value issues attached to what could become the central focus of his life in months to come. * * By the time his basic training was over, he had begun to realize that he could not abide by the warfare in which United States military forces were and are engaged in various parts of the world." [Page 36.]

Mr. Heller's statement appears to establish petitioner's conscientious objector beliefs were first realized by the time he finished basic training in June, 1969. This is inconsistent with the petitioner's representation that those beliefs had not crystallized until 1971.

The statements of the petitioner in his application and the statements in the letters noted above, which are presumed to be based on statements or actions of the petitioner, give rise to the conclusion that the petitioner's beliefs in opposition to war and killing were crystallized before he returned to the University in September, 1970, pursuant to the written agreement (pages 49–50, Tr.Adm.R.) to give three days of military service for each day on temporary duty in school. This continuing agreement is inconsistent with his conscientious belief whether they crystallized in August, 1969, or February, 1971.

5. The findings of the Hearing Officer (Page 7, Tr.Adm.R.) have been discussed hereinabove. Petitioner's statements in his application (Page 22), and particularly his relating to the Hearing Officer after being reminded of his admission in his application that there were occasions when violence is necessary, "that that might be all right for someone else but he personally could not participate in violence", is pertinent. This admission as late as May 28, 1971, as well as the other statements referred to in the application, are inconsistent with petitioner's claim that he is unable to perform noncombatant duties in the Air Force.

The petitioner also says in his application (page 22), "I believe that the use of force is often justified." He then distinguishes between "force" and "violence", defining "force" as "any display of nonviolent resistance or opposition toward that *with which I do not agree*." [Emphasis added.] "Force", he states, can be moral or even "a physically restraining force, as long as it is clearly necessary. The overuse of force, that is the use of force when it is no longer necessary is what I consider violence."

On page 23 he observes: "The act of war is violence. I therefore am opposed to war of any kind, in any form, *as they presently exist*. If this country were placed in the awkward situation mentioned earlier, and violence were the only resort, I would support this country to the best of my ability, *using every conceivable nonviolent method* at my disposal to return this country and the world to peace." [Emphasis added.]

These views of the petitioner appear to be inconsistent with his position that as a conscientious objector he would not perform noncombatant (nonviolent) military service "to return this country and the world to peace."

In the case of Frey v. Larsen, 448 F.2d 811, 1971 the Court of Appeals, 9th Circuit, in affirming an order of the District Court denying a petition for Writ of Habeas Corpus seeking discharge from the Army of the petitioner as a conscientious objector, states:

"Nevertheless, there are additional matters in the record which supply *the minimal quantum of facts* necessary to constitute a basis in fact. In his interview before the second hearing officer, Frey indicated that he might be willing to participate in a noncombatant role in a defensive war if this country was attacked. C.T. 104. The hearing officer could have fairly concluded that this admission was inconsistent with a present objection to participation in war in any form. See Gillette v. United States, supra, 401 U.S. at 439, 91 S.Ct. 828 [28 L.Ed.2d 168]." [Emphasis added.]

■ The burden of proving his conscientious objector status is on the petitioner. The Court concludes that the inconsistencies in the petitioner's presentation support the disapproval by the Air Force of his application for discharge.

Judicial review of military determinations is said to be the "narrowest known to the law." Negre v. Larsen, 418 F.2d 908 (9 C.A.1969).

The Court of Appeals, In Maynard v. United States, 409 F.2d 505 (9 C.A. 1969), in discussing "basis in fact" in a Selective Service case, states:

"The 'basis in fact' which will support the Board's decisions need not even rise to the level of 'substantial evidence.' All that is required is that where the registrant has made out a prima facie case for exemption, there must be 'some proof that is incompatible with the registrant's proof of exemption.' Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132 (1953)." [Page 506.]

■ It follows that if there is a basis in fact negating any one of the criteria for a conscientious objector in the military service, this Court is without power to reverse the decision of the Air Force.

The Supreme Court succinctly sets forth the responsibility of this Court in Dickinson v. United States, *supra,* 346 U.S. at page 396, 74 S.Ct. at page 157:

"The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities."

 This Court is not free to weigh the evidence and the inferences to be drawn therefrom, but only to determine whether there is a basis in fact to support the disapproval by the Air Force of petitioner's application for discharge. Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, supra; Tellez v. Chaffee, 71–1951–DWW, U.S.D.C.C.D. Cal., filed October 19, 1971.

In the *Tellez* case, all of the Navy officers who interviewed the petitioner found him to be sincere but the Court held there was basis in fact to support the disapproval by the Bureau of Naval Personnel.

 The filing of his application a day or two after he received his college degree would not alone constitute a basis in fact for the finding of insincerity on the part of the petitioner but may be considered with other evidence noted above which fortify the findings of the Air Force.

There was ample evidence in the record to show petitioner's dislike for the Air Force and his assigned duties. As noted above, he stated that he hated every minute of basic training and was "bored" with his duties in the service. These facts would not alone constitute the requisite basis in fact but were properly considered with other evidence.

 The petitioner is not entitled to conscientious objector status merely upon presentation of evidence in support of his claim. The Court of Appeals for the 9th Circuit, in United States v. Tigerman, 456 F.2d 54, 1971, states:

"Appellant seems to argue that he became absolutely entitled to a consci-

entious objector classification merely upon the presentation of evidence in support of his claims; i. e., on presentation of a prima facie case the board virtually was without power to cast doubt on his veracity. The law is otherwise. Citing Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), this Court less than a year ago, in United States v. Kember, 437 F.2d 534, 536 (9th Cir. 1970), held:

'A registrant's sincerity in professing beliefs which, prima facie, entitle him to conscientious objector status, is always open to inquiry and, if insincerity is found, rejection of the claimed exemption is appropriate.'

Any fact which casts a doubt on the sincerity of the registrant's religious convictions is relevant to support the denial of conscientious objector status. Maynard v. United States, 409 F.2d 505, 506 (9th Cir. 1969); Selby v. United States, 250 F.2d 666 (9th Cir. 1957). And the board's action is entitled to the support of any inference of sham or insincerity on the part of the registrant which it could have drawn validly and fairly from the record. Bradley v. United States, 218 F.2d 657, 661 (9th Cir. 1954)."

 Where there is conflicting evidence or where two inferences could be drawn from the same testimony, the petitioner may not be said to have been wrongfully denied conscientious objector classification. Witmer v. United States, *supra,* 348 U.S. at page 383, 75 S.Ct. 392.

The recent case of Bratcher v. McNamara, 448 F.2d 222 (9 C.A.1971), involved a complaint filed by the plaintiff Bratcher founded on theories of Habeas Corpus, Mandamus, declaratory judgment and injunctive relief.

Bratcher enlisted in the Army on January 23, 1966. On June 16, 1967, he, for the first time, filed a written statement of his beliefs as a conscientious objector. This was following his apprehension by Military Police for absence

without leave and disobedience of orders. At page 223 of its opinion, the Court states:

"On September 27, 1967, the Secretary of Army determined that Bratcher qualified for classification as a conscientious objector. The Secretary did not however grant his request for 1–O status which would have provided for discharge, but placed him in 1–A–O classification which had the effect of retaining appellant in the Army subject only to non-combatant type duties."

The Court points out that Army Regulation 635–20 "speaks only of discharge and makes no mention of retention in the service on a non-combatant basis." [Page 225.] The plaintiff-appellant urges that, since the application was made under the provisions of AR 635–20, the Secretary was limited to an approval or denial of discharge.

After quoting at some length the provisions of DOD 1300.6, supra, the Court observes that an advisory recommendation from the Selective Service was that Bratcher be classified as 1–A–O. [Page 226.]

The Chaplain who interviewed the appellant was of the impression that his conscientious objector views were sincerely held. His Commanding Officer recommended disapproval of the application. The appellant augmented his application with letters and statements by civilian acquaintances which supported the sincerity of his anti-war beliefs. [Page 227.]

In commenting on the action of the Secretary of the Army in denying discharge and directing that Bratcher be assigned noncombatant duties, the Court says, at page 227:

"The Secretary was entitled to consider the record as a whole in making his determination. He could reasonably take into consideration the fact that Bratcher had volunteered for duty. His reasonable inference was that appellant became disenchanted with military life and initially used the gambit of misconduct to secure release. The psychiatric record reflects that he had, prior to his application for conscientious objector discharge, followed a course of disruptive conduct calculated to bring about separation. * * * We conclude that, at a minimum, a factual basis existed for the determination to place appellant in a 1–A–O status with retention in service on non-combatant duty. Indeed we are of the view that he received a favorable consideration as he might well have been denied either of the conscientious objector classifications and retained in general active duty."

It would follow that the Air Force, in the instant case, could classify the petitioner 1–A–O, noncombatant duty, as recommended by the O–3 Officer and the petitioner's Commanding Officer.

For the reasons herein discussed, the Court concludes that the record discloses a basis in fact for the disapproval of petitioner's claim for discharge as a conscientious objector.

The petition for Writ of Habeas Corpus is ordered denied.

This Memorandum will be deemed to constitute Findings of Fact and Conclusions of Law.