**UNITED STATES of America,**
**Appellee,**

v.

**Richard Martin ANDERSEN, Appellant.**

**No. 26659.**

United States Court of Appeals,
Ninth Circuit.

Aug. 19, 1971.

---

J. B. Tietz (argued), Los Angeles, Cal., for appellant.

Richard L. Jaeger, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Los Angeles, Cal., for appellee.

Before MERRILL, ELY, and HUF-STEDLER, Circuit Judges.

ELY, Circuit Judge:

Andersen was convicted for having failed to submit to induction into the armed forces. 50 U.S.C. App. § 462. We have concluded that the local board had no basis in fact for denying Andersen's timely claim for exemption as a conscientious objector; hence, the judgment of conviction must be reversed.

Andersen had received both student [II–S] and occupational [II–A] deferments from his local board, the latter for a computer programming course he completed in March, 1969. On March 7, 1969, and on April 2, 1969, Andersen submitted completed applications for a conscientious objector classification [SSS Form 150], which were later followed by supporting correspondence. His claim for exemption was based on religious training and belief. It was denied by the local board after a courtesy interview and a personal appearance. The appeals board also rejected the claim, and when called for induction on March 17, 1970, Andersen refused to submit.

Andersen presented a rather complete prima facie claim for conscientious objection. His almost identical applications detail the religious upbringing he received at home, his admiration of, and his association with, a relative who was a medical missionary in Japan, and his objection to war in any form based on the teachings of the Old Testament and the various churches that Andersen regularly attended. The minister of the church with which Andersen had been associated since childhood, and of which his father was an elder, wrote a strong supportive letter, as did the minister of

Andersen's wife's church and Andersen's employer.

Based upon this showing, it was incumbent upon the board to set forth its reasons for its denial of Andersen's application. United States v. Haughton, 413 F.2d 736 (9th Cir. 1969). When the board denied Andersen's claim after the courtesty interview, it entered in the minutes the statement that Andersen did not have the "proper background for CO [conscientious objector] classification." However, this is an invalid reason to deny Andersen's claim. His file amply demonstrates that his beliefs, if sincerely held, would qualify him for conscientious objection. *Cf.* United States v. Bornemann, 424 F.2d 1343 (2d Cir. 1970).[1]

However, Andersen's sincerity (or lack thereof) was set forth by the board as its reason for denying him conscientious objector classification after his personal appearance. A minute entry indicates the board did "not believe registrant to be sincere in his religious beliefs."

The gravamen of a conscientious objector claim, of course, is the sincerity of the applicant. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). Nevertheless, "mere disbelief in the sincerity of a registrant, grounded on no objective evidence of insincerity, will not suffice to deny a registrant an exemption as a conscientious objector." United States v. Hayden, 445 F.2d 1365, 1373 (9th Cir.1971). *See also* Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Abbott, 425 F.2d 910 (8th Cir. 1970); Parrott v. United States, 370 F.2d 388 (9th Cir. 1966). Here, the board did not point to any such "objective evidence" which would support its finding.

1. Indeed, neither formal religious training, membership in a sect opposed to all wars, nor even belief in a Supreme Being is essential to the existence of a "proper background" for conscientious objection. *See*

Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

The Government, however, urges that evidence sufficient to support an inference of insincerity appears from the face of the record. It first argues that Andersen's conscientious objector application, while timely under the regulations, was not made until "he felt the proverbial hot breath of the Selective Service System * * *." However, aside from the assumption implicit in this argument as to when Andersen's beliefs "crystallized" to the point that a sincere applicant would have sought conscientious objection, the Government concedes that belated filing of an otherwise timely conscientious objector claim does not permit an inference of insincerity in cases wherein there was not at least a certain period of time during which the presentation of the claim might have resulted in a different classification. *See, e. g.,* United States v. Abbott, *supra;* United States v. Bornemann, *supra.* The regulations do not require a registrant to file for an exemption as soon as he qualifies therefor, but only that he promptly report facts which could change his classification. 32 C.F.R. § 1625.1(b). Inasmuch as 32 C.F.R. § 1623.2 requires a board to classify a registrant "in the lowest class for which he is determined to be eligible," the *Bornemann* court was, as are we, "compelled to conclude" that the "facts" alluded to in section 1625.1(b)

> "are those which could result in [a registrant] being placed in a lower classification. Any other construction would mean that already busy boards would be required to receive, record, consider and file reams of immaterial

information having no bearing on the classification then held by a registrant, an intention the drafters of the regulations could scarcely have entertained." 424 F.2d at 1347.

Here, the Government notes that Andersen was classified I–A by his board, a higher classification than I–O, between March 1, 1968, and September 11, 1968; however, Andersen timely requested a personal appearance on March 18, 1968. Information supplied by Andersen at that appearance duly qualified him for a II–A deferment, a lower classification than I–O. Thus, information bearing on a potential I–O claim would not have been considered by the board at that time. As soon as Andersen's beliefs were relevant to a classification decision, that is, near the expiration of his II–A deferment in April, 1969, he promptly notified the board of his conscientious objection. Like Bornemann, he therefore "brought his conscientious objections to the attention of his board as soon as 32 C.F.R. § 1625.1(b) required him to do so." 424 F.2d at 1348. In our view, as in the view of the *Bornemann* court, "it would be improper to penalize him for failure to act with greater dispatch than the regulations demanded." *Id.*

The Government also urges other evidence of insincerity. Andersen's conscientious objector applications portrayed his beliefs as having but recently matured. At his personal appearance, in August, 1969, the board's secretary, in summarizing the meeting, reported him as saying he made his "decision" about two years prior.[2] It is true, of course, that factual inconsistencies

2. Andersen's Conscientious Objector Form, filed March 7, 1969, contains the following: "The reason I have not applied for a I.O. classification before this is because my ideas and beliefs did not mature until now. The service and other such things were things that were in the future and something I did not give time or thought to." Andersen reiterated this in his SSS Form 150, filed on April 2, 1969.

Summarizing Andersen's personal appearance, the Executive Secretary of his board wrote: "Board members asked the registrant how his parents felt about the situation. Registrant stated his parents were a little scared about his views thinking he may have to go to jail. Board members asked the registrant how long he has felt this way. Registrant stated about two years ago he made his decision."

material to an application for conscientious objection will support an inference of insincerity. See Witmer v. United States, *supra*; United States v. Haughton, *supra*. In our view, however, there is no inconsistency here.[3]

The quoted statement from Andersen's application explains his "decision" to file for conscientious objector status. His statement to the board, taken in context, does not refer to the time his beliefs matured, but to the inception of his doubts, hence, the beginnings of familial conflict. That these doubts, once fertilized, should not mature for eighteen months is hardly surprising in view of the parental opposition Andersen faced.[4] Indeed, failure to file an already matured claim has been held to be adequately explained by a registrant's concern for the effect such an action might have on his parents. United States v. White, 421 F.2d 487 (5th Cir. 1969).

■ Thus, there being no competent facts in the record from which an inference of Andersen's insincerity could appropriately have been drawn, we are compelled to vacate Andersen's conviction.

Upon remand, the indictment will be dismissed.

Reversed, with directions.

3. The effect of an inconsistency such as this, were it genuine, is questionable in any event. A similar inconsistency was urged by the Government in the *Bornemann* case. Bornemann affirmed his belief in a Supreme Being in his Conscientious Objector Form, but a board summary of his personal appearance reported him to have denied such belief. The court, noting that the board summary did not purport to be a transcript of the personal appearance, commended the district judge for having given no weight to the alleged inconsistency. 424 F.2d at 1346 n. 3. While the summary relied upon by the Government in our case suffers from the same deficiency, it appears that the district judge placed great reliance thereon.

4. Andersen's concern for the effect of his action on his parents appears elsewhere in the record, as well. The supportive letter written by his wife's minister contains the following:

"Rick's father had a nightmare in Iwo Jima, and most of his friends were killed. Rick doesn't talk too much about his position to his dad because he doesn't want to upset him. His father is concerned about Rick's going to prison. Rick says, 'I am scared too, Reverend Doty, but I can't help it. God doesn't want me to take another life.'"