**UNITED STATES of America,
Appellee,**

v.

**James Seth STEWART, Defendant-Appellant.**

**No. 719, Docket 73–1036.**

United States Court of Appeals, Second Circuit.

Argued March 23, 1973.

Decided April 25, 1973.

Frederick B. Boyden, New York City, for defendant-appellant.

George E. Wilson, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., Richard J. Davis, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

James Seth Stewart, Jr., appeals from a judgment of conviction for willful refusal to submit to induction in the Armed Forces, 50 U.S.C. App. § 462(a), entered after a trial in the United States District Court for the Southern District of New York before Judge Charles L. Brieant, Jr., sitting without a jury. Appellant was sentenced on December 14, 1972, as a young adult offender, 18 U.S. C. §§ 4209, 5010(d), to a term of nine months, but was released on bail pending his appeal. In this court he challenges, as he did below, the validity of the underlying induction order, which followed in due course the rejection by the Selective Service System of his claim for exemption from combatant and noncombatant training and service in the Armed Forces as a conscientious objector. See 50 U.S.C. App. § 456(j). Finding error in the administrative proceedings that culminated in denial of Stewart's request for classification as a

conscientious objector, we reverse his conviction.

The essential facts are not disputed. Appellant duly registered with Local Board No. 10 in Mount Vernon, New York, on July 28, 1966. He was thereafter classified II–S (student deferred from military service) from September 26, 1966, to August 19, 1970, as a result of his full-time undergraduate attendance at Stanford University. On February 6, 1970, he requested from the Local Board Selective Service Form 150, the application form for classification as a conscientious objector to combatant training and service (I–A–O status) or to both combatant and noncombatant training and service (I–O status). He thereafter received the form, filled it out, and returned it to the Board on March 26, 1970. In his application for I–O status, Stewart stated that he was "conscientiously opposed to participation in war in any form, . . . further opposed to participation and service in the Armed Forces . . . , but . . . prepared to perform civilian alternative service if called." He submitted a six-page essay in fulfillment of the requirement that he offer certain specified information to substantiate his conscientious objector claim. In it he expressed his beliefs that "God is the creator of life, and his power is Love; love transforms the mystery and contradictions in the human experience into a process of holiness"; and that "war is not fit for men." He further stated:

"Since I will never be persuaded that the destruction of life ever enhances the quality of life, my beliefs insist that I not only never kill, but also that I never ask anyone to kill for my sake. . . . I also oppose by the nature of my beliefs any decision made of who is to kill and be killed. I

therefore cannot serve the war machine of my country in any way."

The source of his beliefs he described as his faith in Christianity and his loving, Christian family background, including the influence of his father, grandfather and uncle, all of whom are ministers. However, he professed to some doubts of his own religious orthodoxy, which had in part prevented him, erroneously, from seeking conscientious objector status at an earlier date. He went on to explain in further detail why his conscientious objection had not surfaced earlier.[1] In answer to the question of whether he had given expression to his views, he cited "many long talks about war and loyalty, peace rallies, a sit-in, and work on the Moratorium. But mainly, I have been concerned. And I also hope that refusing to go to war can be seen as a daily event in my life."

In support of his application, friends and relatives of Stewart submitted eight letters generally noting his integrity and his sincere commitment to his religious beliefs in peace and non-violence.

On August 19, 1970, the Local Board granted appellant a 10-minute discretionary pre-classification interview, at the beginning of which he submitted an additional typewritten statement reiterating that "God is the creator of life, and his power is love" and that "my beliefs insist that killing and war is wrong, and that I not do it." The Local Board denied his request for I–O classification and reclassified him from II–S to I–A (available for induction) by a unanimous 3–0 vote. In its summary the Board explained its action by concluding:

"Registrant is not a genuine conscientious objector based on the norms set forth in LBM #107 in that regis-

---

[1]. "I don't know what I was thinking when I registered for the draft—maybe the approach of college was on my mind, and my father had always assured me that I would not have to go to war. However, though I am not aware of the exact timetable which brought me to this stance, I do sense a continuing logic towards it. The war in Viet Nam of course forced me to become outraged, and its existence demanded that I formulate my response. . . . I know I decided . . . that I somehow could not cooperate with our military effort."

trant's objection is not to all war but to the present specific war."

The Executive Secretary of the Local Board summarized in longhand the oral information given by appellant, noting on the summary sheet, among other things, that "Registrant said he could understand World War 2 but this war (Vietnam) he cannot serve." [2]

At the bottom of the summary of oral information provided by the registrant the following appeared:

"Board's Note: Registrant stated that he would have served in a war like World War 2, but under no circumstances would he be involved or serve in the present type of war."

On August 27, 1970, the day after appellant was notified of the denial of his claim, he reviewed his file. In a letter delivered to the Board on September 10, he appealed the I–A classification, denied having said that he "would have fought in World War II," and requested a personal appearance to discuss the reason for the denial of his application for I–O status.[3] On November 18, 1970, appellant appeared as a matter of right before the Board, again seeking a I–O classification. He submitted a statement explaining his beliefs and describing the misunderstanding about what he had said at the August 19th interview in the following manner:

"I was asked, 'How do you think W.W. II compares to the present war?' I responded that I could understand how a man of conscience could have fought in that war, but that I couldn't understand how someone could in the present war.

"I said that because I know men in my family of great morality who felt at the time that it was their duty to fight, and from my understanding of those times I can sympathize with the dilemma they responded to.

"However, their times and experiences are not mine. I was raised with a different perspective on war.

. . .

"There is no contradiction in my mind: to understand the dilemma under which someone once acted with concience [sic] does not obligate one to commit himself to that action, or in any way invalidate the sincerity of one's intention."

The Board's summary of the November 18 appearance reflected appellant's denial that he had ever said he would have *fought* in World War II, his version of what he had said, and the following:

"The board asked registrant is he a man of conscience. Registrant answered he is. Registrant said that he cannot throw himself back in World War #2, he is against all wars. . . . Registrant said he could not understand why the board felt that he is not sincere. He is prepared to do alternate service."

The Board did not indicate whether or concience [sic] does not obligate one how it reconciled the factual inconsistency between Stewart's version and its Executive Secretary's summary version of the August 19 interview. Instead, the Board members again unanimously denied appellant a I–O classification with the bare conclusion that "the Local Board is not convinced of the sincerity of registrant's claim as a conscientious

---

2. "The board asked registrant had any of his family been in service. Registrant said yes—his father and uncles served in the military. Also what did registrant think of World War 2, would he have served. Registrant said he could understand World War 2 but this war (Vietnam) he cannot serve. He stated that there are different ways to defend the country. He said he would serve alternate service, such as working in a hospital."

3. "I have read my file, and the report of my interview indicates that I said I would have fought in World War II. At not [sic] point was I asked that question, nor did I say that. Since the decision was made on the grounds that I said something I did not say, I feel certain that there was a confusion during the interview which I would like to correct with the personal appearance."

objector." As Judge Brieant noted in his opinion "[t]he Local Board indicated no specific fact or reason which led to its conclusion that defendant was insincere. . . ."

Stewart appealed his I–A classification on January 4, 1971. He also wrote letters to the Local Board on January 4, 6, and 14 attempting to clear up the apparent misunderstanding and convince the members of his sincerity, but the clerk did not bring any of these letters to their attention and no action was taken on them. On February 18, the Appeal Board unanimously sustained the Local Board's classification of appellant as I–A, without stating any reasons for its decision, during a one-hour meeting in which the classifications of 102 registrants were reviewed and determined. Of these, 89 classifications were sustained and 13 were reversed, though none of the 6 conscientious objector appeals was granted. The Appeal Board members did not have the registrants' files before them until the meeting, and there was uncontradicted testimony that they sometimes did, and sometimes did not, review the files but that in the former case they did not make any notation of files reviewed. They did receive summaries of the files about two weeks in advance of the meeting, but these were customarily discarded later and appellant's was never found.

On November 10, 1971, appellant refused to submit to induction. His indictment and conviction followed. Judge Brieant held that there was a "basis in fact," Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946), for the I–A classification given appellant by the Local Board after his November 18 appearance. He further concluded that the failure of the Board members to give reasons for their conclusion that Stewart had not convinced them of the sincerity of his claim as a conscienious objector did not invalidate the I–A classification he was given, since Judge Brieant was able to infer the existence of legally sufficient reasons which appeared to have a factual basis in the record. He explained:

"A reasonable interpretation of the material set forth in his Form 150, taken together with the results of his prior appearance before the same Board, compared with the circumstances of his second appearance, are sufficient to lead a reasonable man to the conclusion that defendant's response was something which had occurred because of the lack of justice in the Viet Nam War, and was not a conscientious objection to all wars. If the Board believed, as I find that it did, based on its colloquy and summaries, and a fair reading of Form 150, that defendant, if the Hitler holocaust were revisited on us today, would have done just as his father and uncles did, then it was justified in finding him insincere in his claim to conscientious objection.

\* \* \* \* \* \*

"The local board was justified in concluding that defendant adjusted his viewpoint about World War II slightly, claiming that with today's beliefs he would not have fought in yesterday's war, and doing so was a recent contrivance, solely for the purpose of gaining a valid basis for I–O classification."

It is settled that conscientious objector status may be denied to a registrant found to oppose only a particular war as "unjust" rather than all "war in any form." Gillette v. United States, 401 U.S. 437, 447, 91 S.Ct. 828, 28 L. Ed.2d 168 (1971). However, before determining whether that principle applies here, we are confronted with a preliminary, but nevertheless crucial, question. Despite the district court's interpretation of the material before it, it is undisputed that nothing Stewart had said or done was in fact suggested by the Board as the basis for its rejection of Stewart's claim. The district court reached its conclusion only through the process of assuming what the Board would have said if it had articulated the

factors relied upon as the basis for its decision. The issues squarely presented upon this appeal, therefore, are (1) whether the Board's failure to specify the reasons for its action is fatal, and (2) if not, whether there was a factual basis for the denial of Stewart's claim.

Until very recently there was some precedential support in this Circuit, apparently relied upon by Judge Brieant, for the proposition that a local draft board, prior to the 1971 amendment noted in the margin,[4] was "not required to give any reasons for its decisions," United States ex rel. Zelman v. Carpenter, 457 F.2d 621, 622 n. 1, 624 (2d Cir. 1972), and that where the board failed to specify its reasons other than in general conclusory terms the court could independently search the record to determine whether there was a basis in fact for the board's decision, see Weissman v. Officer of the Day, 444 F.2d 1326, 1328 (2d Cir. 1971); Rosengart v. Laird, 449 F.2d 523, 529 (2d Cir. 1971), vacated and remanded, 405 U.S. 908, 92 S.Ct. 931, 30 L.Ed.2d 779 (1972). The reasoning behind this approach, as the district court here recognized, was that a group of voluntary laymen cannot be expected to make detailed findings or statements of reasons of the type usually expected of professionals well versed in legal requirements for administrative review, see United States v. Aull, 341 F.Supp. 389, 394, aff'd, 469 F.2d 151 (2d Cir. 1972). However, at the same time there have been those who have consistently expressed apprehension lest the "mere *ipse dixit* of lack of sincerity from the Local Board or the hearing officer would create serious possibilities of abuse," United States v. Corliss, 280 F. 2d 808, 814 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960), and who have emphasized that while "boards of volunteer laymen cannot be expected to express themselves with the elaboration of expert regulatory agencies" it is important for a reviewing court to know the grounds upon which the board acted. Paszel v. Laird, 426 F.2d 1169, 1175 (2d Cir. 1970). A serious claim of conscientious objection, it was observed, "deserved something better than an ambiguous checkmark," *id.* See also United States v. Deere, 428 F.2d 1119 (2d Cir. 1970); United States v. Lenhard, 437 F.2d 936 (2d Cir. 1970). At least five other circuits, moreover, concluded, prior to more recent Supreme Court decisions on the subject (discussed below), that a local board's failure to state the reasons for its action constituted a denial of due process requiring reversal, in such instances, of a conviction based upon the refusal to obey the board's induction order. United States v. Edwards, 450 F.2d 49 (1st Cir. 1971); United States v. Speicher, 439 F.2d 104 (3d Cir. 1971); United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970) (en banc); United States v. Stetter, 445 F.2d 472, 481–85 (5th Cir. 1971); United States v. Jamison, 463 F.2d 1219 (9th Cir. 1972).

Any uncertainty as to whether a local board's failure to articulate its reasons for denial of conscientious objector status calls for reversal of the applicant's later conviction was eliminated by the Supreme Court's recent decisions in Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (1972), and in Lenhard v. United States, 405 U.S. 1013, 92 S.Ct. 1296, 31 L.Ed.2d 477 (1972). In *Lenhard,* which went to the Supreme Court from this Circuit, the local board had, without stating any reasons, denied appellant's application for status as a conscientious objector and classified him I–A, following which he failed to respond when called for induction. After Lenhard was convicted we,

4. Section 101(a)(36) of Public Law 92–129, enacted September 28, 1971, and codified at 50 U.S.C. App. § 471a(b)(4) (1972 Supp.), requires that pursuant to such rules and regulations as the President may prescribe, "[i]n the event of a decision adverse to the claim of a registrant, the local or appeal board making such decision shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision." See 32 C.F.R. § 1623.4(c) (1972).

upon appeal, remanded the case to the district court to determine whether there was a factual basis for the board's classification. The district court, following a hearing in which board members testified as to their reasons for concluding that Lenhard was insincere, reinstated the conviction. We affirmed.

Upon Lenhard's petition to the Supreme Court for a writ of certiorari the Solicitor General filed a memorandum requesting that the writ be granted, the judgment vacated, and the conviction reversed on the ground that since Lenhard's application had made out a *prima facie* claim for classification as a conscientious objector the failure of the local board to state its reasons for its denial of his claim precluded meaningful administrative review as mandated by Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). With respect to the requirement that the board state its reasons the Solicitor General's memorandum stated:

> "[W]e are unable to subscribe fully to the Second Circuit's remand procedure in the circumstances of this case. It is here undisputed that petitioner stated a *prima facie* case for conscientious objector status, that the local board regarded the claim as sufficient to warrant a reopening of the classification (Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362), and that, therefore, reasons should have been stated by the board in support of its decision (see Gov't. Mem. on Merits in Joseph v. United States, No. 70–251, this Term, pp. 18–23). Only in this way can a registrant, whose claim has 'met the statutory criteria' (Parrot v. United States, 370 F.2d 388 (C.A.9)), and whose 'veracity * * * is the principal issue' (United States v. Washington, 392 F.2d 37, 39 (C.A.6)), be assured of a 'meaningful review' (cf. Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 99 L.Ed. 467) of the administrative determination, not only by the courts (see, *e. g.*, Scott v. Commanding Officer, 431 F.2d 1132

(C.A.3); United States v. Haughton, 413 F.2d 736 (C.A.9)), but also by the State Appeal Board (see, *e. g.*, United States v. Speicher, 439 F.2d 104 (C.A.3); United States v. Broyles, 423 F.2d 1299 (C.A.4)). ·

\* \* \* \* \* \*

> "Our difficulty is . . . at the *administrative* review level; we agree with the dissent below that the belated revelation at the hearing following the trial of the local board's reasons does little to make the earlier review of the claim by the State Appeal Board any more meaningful. While that review is *de novo*, the Selective Service regulations provide that the one taking an administrative appeal shall have an opportunity to submit a written statement to the State Appeal Board setting forth in what manner he believes the local board erred (32 C.F.R. 1626.12). As this Court recognized many years ago in Gonzales v. United States, *supra*, 348 U.S. at 415, 75 S.Ct. 409, 'the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered.' This, we think, requires, at the very least, knowledge of the grounds for the local board's decision. See, *e. g.*, United States v. Broyles, *supra*, 423 F.2d at 1305–1306; United States v. Washington, *supra*, 392 F.2d at 39."

The Supreme Court thereupon remanded both *Lenhard* and *Joseph*, a similar case, "for consideration in the light of the position now asserted by the Solicitor General." 405 U.S. 1006, 1013. Upon remand we reversed Lenhard's conviction. 461 F.2d 1268 (1972).

 We interpret the Supreme Court's decisions in *Lenhard* and *Joseph* as dictating that where an applicant states a *prima facie* case for classification as a conscientious objector and the local board fails to state its reasons for denial of the application, thus precluding

meaningful administrative review, a conviction based upon the board's I–A classification must be reversed. United States v. Holby, 477 F.2d 649, 651, 656–657 (2d Cir. 1973). Accord, United States v. Hulsey, 463 F.2d 1071, 1075 (7th Cir. 1972); United States v. Hanson, 460 F.2d 337, 342–343 (8th Cir. 1972). An independent review by the district court to determine whether a "basis in fact" existed for the local board's action is not an adequate substitute for the board's failure to articulate its premises. Aside from the questionable propriety of a court's substitution of its speculation for the board's silence, see SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943), the court's findings, which occur after the administrative review, come too late to enable the applicant to rebut or refute them upon review by the Appeal Board.

We have further recognized recently, in considering the "reasons" requirement in connection with review of an ROTC cadet's application for discharge as a conscientious objector, that the requirement is not satisfied by a board's mere conclusory statements of insincerity. The facts or factors relied upon by the board must be stated. United States ex rel. Checkman v. Laird, 469 F.2d 773, 785 (2d Cir. 1972); see United States v. Andersen, 447 F.2d 1063, 1065 (9th Cir. 1971). Otherwise the reviewing board cannot know whether the local board based its decision on valid or invalid grounds. Furthermore, in view of our recent holding that the appeals board may affirm the findings of the subordinate board without restatement of the reasons for its decision, United States v. Orr, 474 F.2d 1365, 1369 (2d Cir. 1973), it becomes all the more important that the local board specify the facts forming the basis of its decision.

■ Application of these principles here mandates a reversal. The Local Board concluded summarily that it was "not convinced of the sincerity of Registrant's claim." In the words of the district court, the Board "indicated no specific fact or reason which led to its conclusion." Although the Board had stated in its earlier rejection that Stewart was "not a genuine conscientious objector . . . in that [his] objection is not to all wars but to the present specific war" he promptly objected to the clerk's handwritten summary of the earlier courtesy interview, which apparently was the basis for the Board's action, as inaccurate. He further affirmed in person and in writing that he at no time stated that he would have fought in World War II. He contended that what he had said was that, assuming he had lived in the days of World War II (which he had not) and had been raised in the same beliefs as people in that era, he probably would have signed up, but that he had been raised in a different era, with a different perspective on war and a different understanding of war's influences and, as a consequence, was sincerely opposed to war generally.

■ Confronted with this issue as to what had been said by Stewart, the Board owed a duty to be more specific in stating the reason for its action, particularly since it was now summarizing a decision based upon the interview to which Stewart was entitled as a matter of right, as distinguished from the earlier "courtesy" interview. Instead of specifying the basis of its November 18 decision, however, the Board issued a cryptic, conclusory sentence which leaves us to speculate as to the reasons for the denial of the application. Some of those possible reasons might have been valid, others invalid. The Board may have concluded, for instance, that its record of the first interview was accurate and that it did not believe Stewart's version of his earlier oral statement to the Board or his professed opposition to all war. On the other hand, it may have decided that its clerk's earlier longhand notes were inaccurate and that Stewart had in fact consistently maintained his objection to all wars at both hearings, but nevertheless have concluded that he should be denied conscientious objector status because of his statement that un-

der the hypothetical conditions assumed by him, he probably would have signed up in World War II. Or the Board may have acted because it believed his profession of conscientious objection to be a recent contrivance by a "glib college kid." If the Board had articulated any of these premises, Stewart would at least have had a chance upon administrative review to demonstrate either the falsity or the invalidity of the Board's reasoning. In the absence of any specification by the Board of the factual basis for its decision, however, he was deprived of that opportunity.

Even assuming *arguendo* that the Board based its decision on the ground that Stewart was opposed to war on a selective, rather than on a general, basis we seriously question whether there is a sufficient factual basis to support that conclusion. The record reveals that Stewart repeatedly expressed himself, both before and after both interviews, as being opposed to war in any form. The view that he "would have served in a war like World War 2" appears to have been based on a misunderstanding as to the hypothetical nature of the assumptions which underlay his views with respect to that war. What he appears to have said was that *if* he had lived in the era of World War II (which he had not) and *if* he had been exposed to the same influences as had his father prior to and during that war (which he had not been) he probably would have served in World War II, just as his father had done. This frank concession is hardly inconsistent with his current opposition to all wars, including World War II if it were presently being conducted. However, since Stewart's conviction must be reversed because of the Board's failure to state its reasons, we need not pursue the subject further except to note that the very uncertainty and speculation engendered by the Board's cryptic disposition of the case

points to the wisdom of the Supreme Court's recent imprimatur on the rule requiring that reasons be stated for the Board's denial of a registrant's claim to be classified as a conscientious objector.

■ Stewart further urges that he was denied due process because of the Appeal Board's failure to state the reasons for its affirmance of the local board's I–A classification and because of the Appeal Board's inadequate consideration of his case. The first of these contentions has been rejected in a recent decision of this court, to which we adhere. United States v. Orr, *supra*. The second presents a more serious issue. The Appeal Board was required to give Stewart's appeal such consideration as would satisfy due process requirements and permit a full and fair disposition of his contentions. Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); Mintz v. Howlett, 207 F.2d 758, 762 (2d Cir. 1953). That Board's minutes, however, reveal that in a period of one hour on February 18, 1971, it reviewed 102 local board classifications, including that of Stewart, of which 89 were sustained and 13 were reversed. None of the six conscientious objector appeals was granted.

These facts may raise a due process question. However, since we have concluded that the conviction must be reversed for the reasons already stated, it becomes unnecessary to remand for resolution of the issue raised as to the adequacy of administrative review of Stewart's classification. For the same reason, it is unnecessary to discuss appellant's final argument, that the failure of the clerk of the Local Board to transmit to Board members any of appellant's post-November 18 communications denied him due process.

The conviction is reversed and the case is remanded with directions to dismiss the indictment.