**UNITED STATES of America,**
**Appellee,**

v.

**Eric Marshall NAGLER, Appellant.**

**No. 808, Docket 73–1194.**

United States Court of Appeals,
Second Circuit.

Argued April 26, 1973.

Decided May 17, 1973.

Donald L. Doernberg, New York City (Jeremiah S. Gutman, Levy, Gutman, Goldberg & Kaplan, New York City, of counsel), for appellant.

Thomas R. Maher, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E.D.N.Y., L. Kevin Sheridan, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before BREITENSTEIN,* KAUFMAN and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Eric Marshall Nagler appeals from a judgment of conviction for failure to report for induction into the armed forces in violation of 50 U.S.C. App. § 462(a), entered after a trial in the Eastern District of New York before Judge Anthony J. Travia, sitting without a jury. Appellant was sentenced to three years imprisonment and was released on bail pending this appeal. The question before us is whether the denial of appellant's claim for classification as a conscientious objector to combatant and noncombatant training and service (I–O status) and his consequent retention in a I–A classification resulted from a denial of due process. We conclude that the Local Board did not provide adequate reasons for its rejection of appellant's conscientious objection claim, that appellant was thus subject to an invalid induction order, and that his conviction based on that order must therefore be reversed.

The essential facts are undisputed. Appellant duly registered with Local Board 41 in Brooklyn, New York, on June 6, 1960. He was classified I–A on October 18, 1961, but on December 11, 1963, he was reclassified II–S until June 1964 because he had enrolled as a full-time graduate student in psychology at Queens College. On December 16, 1964,

* Of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

he was again classified I–A. After receiving information five days later from Queens College that appellant was still pursuing a graduate degree part-time, the Local Board reviewed his classification on January 20, 1965, but concluded that the new information did "not warrant reopening." On September 22, 1965, Nagler was continued in a I–A classification, and on November 1 he was ordered to report November 12 for an Armed Forces Physical Examination. He reported for the examination as required,[1] though he had in the interim, by letter dated November 5, 1965, requested from his Local Board SSS Form 150, the Special Form for Conscientious Objectors.

The Local Board received appellant's completed application for conscientious objector status on November 22, 1965, along with seven letters in support of it. The Government concedes that his application "made out a *prima facie* case for reclassification as a conscientious objector."[2] Appellant based his claim on religious beliefs, including belief in a Supreme Being, which led him to "three deeply felt guiding forces: nonviolence, respect for the individual, and responsibility to the community." He noted his Jewish background, but stressed "freedom of religion" and recorded his membership in the National Ethical Youth Organization of the New York Ethical Culture Society and its Executive Committee when he was in high school, as well as membership in the Fellowship of Reconciliation, the Committee for a Sane Nuclear Policy, and the New York Herpetological Society. He also stated that he was "opposed to all war," that his conscience would not allow him to take part in killing, and that "non-violence *is* always a possible alternative when nations are at odds" and should be fol-

lowed if at all possible in situations of individual attack, though if there were no alternatives he allowed that he would in the final analysis fight for his life. Appellant cited his brother, also a conscientious objector, as the one person most influential in guiding him towards pacifism.

No action was taken by the Local Board on Nagler's claim until seven months later, just after he wrote to them requesting permission to leave the United States for a two-month period. On June 14, 1966, he received notification of a discretionary interview before the Local Board, to be held on the following day, June 15. Following his appearance, his claim for classification as a conscientious objector was rejected by the Local Board and his request for a permit to depart the country was denied. The Board's minutes of his appearance and of its disposition include the following notations:

> "Reg. appeared requests deferment on grounds of being a conscientious objector. . . . 21 Questions and Answers read and considered by the Board. . . . He stated he was an atheist because he did not believe in the Jewish God or the Christian God. Believes that killing is against civilization and that things should be handled by non-violence. . . . Board finds this registrant to be less than sincere and statements were found to be somewhat inconsistent i. e. re: belief in Supreme Being. Registrant does not qualify for I–O Classification under the existing regulations."

Appellant asked the Board to reconsider its decision and to reopen his classification, complaining that he had not been afforded sufficient time to prepare for the interview. After a lengthy ex-

---

1. Although Nagler submitted to the Armed Forces Physical Examination, he refused to complete its Security Questionnaire (DD Form 98) on the ground that it represented an "unwarranted invasion of [his] right to freedom of association and belief."

2. Appellee's Brief 5. See United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970).

change of correspondence, he was granted a personal appearance on September 13, 1966, but his claim was again rejected and he was retained in a I–A classification. The Board's summary stated the following relevant observations:

"Reg. states he is of the Jewish Religion but does not attend any synagogue or Temple. . . . about a year ago he joined the Fellowship of Reconciliation. . . . Attended a Quakers meeting once and only listened. Reg. states that he would not now call himself an atheist. He believes in a Supreme being that does not organize religions but humanists. Basis of objection to war is that it is wrong to kill. . . . The 21 questions and answers read & considered by the Board. Reg. states his answers are the same today. . . . Minutes of meeting dtd June 15, 1966 were considered & same questions & answers received. Conscientious objector for religious reasons. . . . Board finds that registrant to be less than sincere [sic] and statements made now are inconsistent with statements made at prior hearing held on June 15, 1966. . . . Does not warrant reopening 4–0."

Nagler appealed the Local Board's determination to the Appeal Board which, pursuant to procedures then applicable, 50 U.S.C. App. § 456(j) (1948) and 32 C.F.R. § 626.25(a) (1948), sought an advisory recommendation from the Department of Justice after it had reviewed the file and "tentatively" determined that appellant was not eligible for a I–O classification. A Hearing Officer from

the Justice Department interviewed appellant on May 31, 1967, concluded that he was sincere in his religious beliefs and conscientious objection, and recommended that his conscientious objector claim be sustained. In the formal reply to the Appeal Board, however, T. Oscar Smith, Chief of the Justice Department's Conscientious Objector Section, relayed the recommendation of the Department of Justice that the conscientious objection claim *not* be sustained because (1) it was filed after appellant had been classified I–A and ordered for his physical examination, (2) asserting the claim at that late date was "not persuasive" of "deep and abiding beliefs held for a long period of time," and (3) the inconsistencies cited by the Local Board could be considered in its determination of appellant's sincerity.[3]

In accordance with Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L. Ed. 467 (1955), appellant was given an opportunity to and did respond to the Justice Department's recommendation. In a 10-page letter to the Appeal Board dated August 27, 1967, Nagler protested that he had informed his Local Board at the earliest point when he had been fully convinced that he was a conscientious objector and that even if he had not been called for a pre-induction physical examination he would still have sent for the SSS Form 150 when he did. He disputed the Local Board's summary descriptions of what he had said at his two appearances before them and their conclusion that he had been inconsistent in his views regarding his belief in a Supreme Being.[4]

3. Mr. Smith's letter did set forth, among other things, the Hearing Officer's recommendation and the fact that the Hearing Officer had reported "that the registrant's early religious training was Jewish but that his beliefs are of a personal nature based on his own present understanding of the teachings of Jesus and upon his individual inquiry into various philosophies of religion" and that "he believes in a Supreme Being."

4. Nagler's letter stated in pertinent part:
"In neither of my two appearances before the Local Board did I state that I am an atheist. At my first encounter I did say that I did not believe in either the Jewish or the Christian God, but I was as clear as I could be on my conception of God. I said then unequivocably [sic] that I believe in God, and I pointed out that the answers to the questions in series II of my SSS Form 150 are quite clear on this. . . .

Despite appellant's explanations, the Appeal Board unanimously sustained the Local Board's I–A classification on October 9, 1967, without any statement of reasons. Appellant was subsequently ordered to report for induction on November 13, 1967, and he failed to do so. He was indicted on May 13, 1969 and this conviction followed.[5]

Judge Travia rejected appellant's argument that the Local Board's classification of him as I–A was without a "basis in fact," Estep v. United States, 327 U. S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946), and that the Appeal Board's determination was invalid because that Board did not state its reasons for affirming the Local Board's classification. The court accepted as a valid "basis in fact" the Local Board's conclusion that appellant was "insincere" because of inconsistent statements as to his religious views. Judge Travia also interpreted the Appeal Board's determination as resting solely on the ground of insincerity, since the Appeal Board tentatively rejected appellant's claim before it sought the Justice Department recommendation and the judge construed the Department's advice as relating solely to the question of appellant's sincerity. On this interpretation Judge Travia concluded that the failure of the Appeal Board to state the reasons for its determination did not affect the validity of the induction order.

█ The legal parameters governing this appeal have been indicated by recent rulings of the Supreme Court, Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed. 473 (1972), and Lenhard v. United States, 405 U.S. 1013, 92 S.Ct. 1296, 31 L.Ed.2d 477 (1973), which have been interpreted by this and other circuits considering the issue as mandating reversal of a conviction upon a record of the type here

"God, to me, is not something which can be clearly defined by words, as can be the Judeo-Christian God, God is experienced emotionally much more than rationally. It is the Universe, It is everything that is Good, It is the Ideal, It is Love, It is Life. . . . At my second appearance before the Local Board, . . . I remember clearly the events which led up to their writing 'Reg. does not now call himself an atheist.' One of the members was looking at a paper (which I assume to have been the minutes of my first appearance) and told me that I call myself an atheist. I said that I don't. He said that at my first appearance I had claimed atheism. I replied that I had not said such a thing. He then dictated . . . words to the effect that I now retract my former statement of atheism. I then said that I do not retract any statement, that I never made such a statement to the Local Board. He then dictated . . . words to the effect that I do not remember making any statement that I was an atheist, and that I do not now call myself one. I then began to repeat what I had said at the first meeting concerning my belief in God, but was interrupted. . . .

\* \* \* \* \*

"The minutes of the second appearance state that I believe in a 'Supreme Being that does not organize religions but humanists.' I do not remember making this statement. I do not know what it means. . . ."

5. After the rejection of his conscientious objector claim by the Appeal Board, appellant requested an occupational deferment from his Local Board on October 23, 1967. His request was supported by a letter from his employer, an Associate Commissioner for Research and Evaluation in the State Education Department of the University of the State of New York. The Local Board convened on October 24, reviewed appellant's file, and determined that the new information did not warrant reopening his classification.

Appellant urges that the Local Board's refusal to reopen his classification was error invalidating his subsequent induction order because he had stated a *prima facie* claim for an occupational deferment under 32 C.F.R. §§ 1622.22(a), 1622.23 (1967). The Government takes issue as to the latter claim. Because of our disposition of this case on the conscientious objector claim, we need not resolve this controversy.

presented.[6] It is now clear that when a registrant states a *prima facie* claim for a conscientious objector classification, as concededly appellant did here, his Local Board's failure to give reasons for denying his claim precludes meaningful administrative review by the Appeal Board and therefore invalidates a I–A classification following such denial. Accordingly a conviction based on failure to respond to an induction order grounded on that classification must be reversed. United States v. Stewart, 478 F.2d 106, 112 (2d Cir. 1973); United States v. Holby, 477 F.2d 649, 656–657 (2d Cir. 1973). Furthermore, since an Appeal Board need not restate the reasons for denying the claim when it affirms the Local Board's determination, United States v. Orr, 474 F.2d 1365, 1369 (2d Cir. 1973), it "becomes all the more important that the local board specify the facts forming the basis of its decision," United States v. Stewart, *supra* at 112–113. We noted specifically in the *Stewart* case that the requirement that reasons be furnished for rejecting the conscientious objector claim "is not satisfied by a board's mere conclusory statements of insincerity. The facts or factors relied upon by the board must be stated. United States ex rel. Checkman v. Laird, 469 F.2d 773, 785 (2d Cir. 1972); see United States v. Andersen, 447 F.2d 1063, 1065 (9th Cir. 1971)." *Id.*

Application of these principles here dictates reversal of Nagler's conviction. After his first appearance before the Local Board on June 15, 1966, his claim was rejected because he was found to be "less than sincere" and his "statements were found to be somewhat inconsistent, i. e. re: belief in Supreme Being." The conclusion of insincerity, standing alone, would not suffice to support the Board's determination, United States v. Stewart, *supra,* 112. To the extent that it is supplemented by a reference to Nagler's inconsistent statements regarding his religious views, the

Government has conceded that "in his reply to the Smith letter Nagler appears to have fully answered and explained the alleged inconsistencies, at least to the extent that *even without crediting his version of what transpired at his meetings with the Board,* no reasonable person could conclude that there was any necessary inconsistency in his religious views." [7] (Emphasis supplied) Since the misunderstanding as to the nature of appellant's belief in a Supreme Being was not based upon objective fact but rather upon either an erroneous record of what he had said or upon a misconception by the Board members of what he had described as his beliefs, the alleged inconsistencies do not constitute a relevant "fact which casts doubt on the veracity of the registrant," Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955). Without a rational basis for finding appellant's statements concerning his belief in a Supreme Being inconsistent, the Local Board cannot either base its classification on the inconsistencies or base its conclusion of insincerity on inference drawn from the supposed inconsistencies. United States v. Anderson, *supra,* 447 F.2d at 1066–1067. Cf. United States v. Corliss, 280 F.2d 808, 814 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); United States v. O'Rourke, 341 F.Supp. 622, 626 (S.D.N.Y.1972).

Nor do the minutes of appellant's second appearance before the Local Board, an appearance as of right, provide a sufficient basis in fact to support the Board's denial of his conscientious objector claim, as the Government now urges. The Board concluded again that appellant was "less than sincere" and this time that "statements made now are inconsistent with statements made at prior hearing held on June 15, 1966." Obviously, if the inconsistencies refer to statements concerning appellant's religious views, they gain no more basis

---

6. United States v. Lenhard, 461 F.2d 1268 (2d Cir. 1972) (on remand); United States v. Hulsey, 463 F.2d 1071, 1075 (7th Cir. 1972); United States v. Hanson, 460 F.2d 337, 342–343 (8th Cir. 1972).

7. Appellee's Brief 18.

through repetition a second time. Adopting this view, the Government, erroneously assuming that if it could show that there was a "basis in fact" for the decisions of the Local and Appeal Boards no statement of the reasons actually relied upon by those Boards was required,[8] initially took the position upon this appeal that the "inconsistencies," which it correctly interpreted as referring solely to "the registrant's use of or the Board's understanding of the term 'atheist,'" were not sufficiently substantial to uphold the Board's decision, stating:

"The government concedes that, without more, these alleged inconsistencies would appear insufficient upon which to predicate a finding of insincerity. Very simply there is not enough in this record on this point.

"At the same time, however, the Government would suggest that, on this record it seems quite unlikely that these alleged inconsistencies played any substantial role, if any at all, in influencing the Appeals Board and that there was other evidence, much more strongly emphasized in the Smith letter. . . ."[9]

Notwithstanding the Supreme Court's decisions in *Lenhard* and *Joseph* and our intervening decisions in *Holby* and *Stewart*, with which the Government was first confronted after briefing the appeal, it nevertheless continues to urge other "inconsistencies" which it has culled from the record in an effort to support the Local Board's finding of insincerity. However, in view of our agreement with the Government's initial interpretation of the Local Board's use of the term as referring solely to the registrant's religious views we must reject any reasons that were not articulated by the Local Board. Accordingly, we are left with that Board's mere conclusion that a registrant is "less than sin-

cere," which is insufficient. United States v. Stewart, *supra*.

██ Nor can the Government gain any comfort from the Appeal Board's decision, which sustained the Local Board's I–A classification on appeal without giving any reason, conclusory or otherwise. If the Local Board has supported its decision with a valid statement of reasons, a further statement by the Appeal Board would be unnecessary. United States v. Orr, 474 F.2d 1365, 1369 (2d Cir. 1973). But where, as here, the Local Board has failed to furnish such a statement, that deficiency can not be cured by the Appeal Board, since the Local Board, not having articulated any reasons which rest on a "basis in fact," may have acted upon invalid grounds. The Appeal Board, like ourselves has been left to speculate as to what legitimate reasons, if any, the Local Board might have found conclusive. The registrant, because of the Local Board's silence, is deprived of a basic due process step, i. e., meaningful administrative review, which is an essential element of the system and should be accorded to all registrants.

██ In any event, the Appeal Board's decision is fatally deficient for the reason that it failed to state any reason at all for its rejection of appellant's claim, thus leaving us to speculate as to its grounds, just as we must speculate as to the basis of the Local Board's decision. This deficiency cannot be remedied by reference to the reasons suggested to the Appeal Board by the Chief of the Justice Department's Conscientious Objector Section, to which the Appeal Board looked for guidance. Some of these suggested reasons were plainly insufficient. Although late crystallization and assertion of conscientious objection may be viewed by a Board with suspicion, this factor is not conclusive. The claim may nevertheless be

---

8. Upon their initial briefing of this appeal, neither side referred to the Supreme Court's decisions in *Lenhard* and *Joseph*, *supra*, and of course our decisions in *Holby* and *Stewart* had not yet issued.

9. Appellee's Brief 17.

found to have been asserted in good faith. It cannot, therefore, automatically be rejected on such grounds. Ehlert v. United States, 402 U.S. 99, 103–104, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); United States v. Gearey I, 368 F.2d 144 (2d Cir. 1966); United States v. Gearey II, 379 F.2d 915 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970). And in any event the Appeal Board may have made its determination in reliance on the unsupported ground of inconsistent statements by Nagler as to his religious views, since this appears to have been the basis of the Local Board's decision and the Justice Department, in turn, stated that it could properly be considered. Since the Appeal Board's decision may well have been based upon invalid grounds, its decision could not in any event be upheld. Clay v. United States, 403 U.S. 698, 704, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971).

The judgment of the district court is reversed with directions that the indictment be dismissed.