**Stanley Lawrence GRUCA, Appellant,**

v.

**SECRETARY OF the ARMY.**
**No. 23840.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 30, 1970.

Decided Oct. 23, 1970.

Petition for Rehearing Denied
Nov. 19, 1970.

Certiorari Denied March 22, 1971.
See 91 S.Ct. 1208.

Mr. Joseph Forer, Washington, D. C., with whom Mr. David Rein, Washington, D. C., was on the brief, for appellant.

Mr. Gregory C. Brady, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, and Miss Mary E. Folliard, Asst. U. S. Attys., were on the brief, for appellee.

Before McGOWAN, TAMM, and Mac-KINNON, Circuit Judges.

TAMM, Circuit Judge:

On this appeal ours is the difficult but limited task of reviewing a draft board's finding that the appellant Gruca was not entitled to be classified as a conscientious objector. The difficulty we face is inherent in a process which attempts to distinguish between a sincere belief and one that is not truly held and which for its success must rely in large part on deductions drawn from a registrant's words and demeanor. At the same time the range of our intervention in this process is narrowly limited to determining whether there was any basis in fact for the draft board's finding. Having examined the record before us with great care and having determined that there was a basis for the board's decision, we must affirm the denial of Gruca's application. Our conclusion has been reached with some hesitation, however, based on the reasons which follow.

Although the background of this case is somewhat detailed, we think it necessary to set it forth in order to put the controversy in the proper context. Stanley Lawrence Gruca was born on March 16, 1949; in April of 1967, shortly after his eighteenth birthday, he registered with his local draft board (hereafter "the Board") in Ravenna, Ohio. He listed his occupation as "student" but noted that he expected to graduate in June of that year. The Board classified him as a student. (App. 24.) Shortly after graduating from high school, Gruca was notified that he had been reclassified 1–A (available for military induction), and several months thereafter he was tested and found acceptable for induction. (App. 33.) One month later Gruca wrote

his Board requesting "Selective Service Form 150 for Conscientious Objector" which he filled out and returned to the Board. In response to the Board's request for a personal interview before evaluating his application, Gruca went before the Board and explained his reasons for requesting the classification. The next day he was notified that his request had been denied and he appealed to the State Appeal Board; that body upheld the Board without comment. (App. 48.)

Several months later Gruca was inducted into the Armed Forces. Thus he did not follow the more customary route in this type of a case by refusing induction and then defending against a prosecution for that refusal on the ground that he was a conscientious objector. Instead, Gruca completed basic training and only thereafter did he resume his claim by applying for a discharge from the Army on conscientious objector grounds.[1] The Army then accorded Gruca a full panoply of procedural safeguards but decided not to grant him a discharge.

Gruca then went to court. He filed a habeas corpus action in the United States District Court for the Western District of Oklahoma seeking his release from the Army. Because at that time he was under the interim jurisdiction of Army Headquarters in Washington, D. C., Gruca's Oklahoma suit was dismissed; he thereafter brought the same suit here in the District of Columbia. The trial court summarized the gravamen of his petition in the following sentences:

[H]e alleged that the Selective Service Board had no basis in fact for denying his application for exemption from military service by reason of conscientious objection. Alternative-

ly, [Gruca] alleged that the decision of the Army in denying his application for discharge pursuant to Army Regulation 635–20 had no basis in fact and was arbitrary and capricious. (App. 86.)

The parties submitted the records of the Selective Service and of the Army and, after hearing argument, the court ruled that Gruca had waived his right to challenge the Board's classification "by submitting to induction, serving in the Army, and filing an application for discharge pursuant to Army Regulation 635–20." (App. 86.) The court cited one section of this Regulation (which outlines the procedure for "personal separation" due to conscientious objection) as authority for its finding of waiver. That section reads as follows:

Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes waiver of the right to claim.

(AR 635–20 § 3(b) (1969).) Alternatively the court found that there was a basis in fact for the Board's denial; it also concluded that appellant was not entitled to relief from the Army's refusal to grant him a discharge. (App. 86–87.) The trial judge therefore dismissed Gruca's petition and this appeal was brought.

At the outset we are met with an argument based on the trial court's finding of waiver. There are several aspects to this contention all of which tend to become intermingled, making it difficult to understand the Government's precise position. We have attempted to segregate each aspect to facilitate our discussion on the merits of the Government's argument. It would seem, as a prelim-

---

1. The appellant's application for discharge was filed pursuant to Army Regulation No. 635–20. The Army proceeding for release due to conscientious objection, however, is explicitly restricted by the terms of Army Regulation 635–20 § 3(a) (1969) to an objection which "develops *subsequent* to entry into the active military service." (Emphasis added.) This record in no way suggests that this was the case with respect to appellant. As a result this court finds it unnecessary to delve into the merits of the Army's ruling, since it seems quite clear that appellant's case was not really required to be pursued by the Army at all.

inary matter, that the trial court misunderstood the applicability of AR 635–20 § 3(b) because that Regulation deals with applicants who have failed to make a claim for an exemption prior to receiving a notice of induction. As we have noted Gruca had claimed an exemption well before he received his notice of induction, and therefore he does not come within the apparent intendment of AR 635–20 § 3(b).

The concept of waiver is subject to alternate meanings, however, and the Government in its brief shifts its focus to several of these. The Government's basic theory seems to be that Gruca could have petitioned for the writ immediately after induction, but that his delay of seven months constituted a waiver of that privilege. Thus the argument is primarily one of laches, rather than of waiver in the technical sense, and its validity depends on the need for finality in Selective Service classifications and on the danger of disrupting the system by allowing untimely petitions. Cf. United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).

Another aspect of the waiver argument was not directly confronted in the briefs but was raised in oral argument. It proceeds from the notion that a sincere conscientious objector could never allow himself to submit to induction into the Army. It then follows that Gruca, by submitting to induction, demonstrated a lack of sincerity and therefore waived his right to judicial consideration of his claim for exemption. This thesis has gained prominence due to a reference in a recent Supreme Court decision involving the Selective Service laws. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). There the Court said:

> The scope of judicial review is, as a practical matter, particularly narrow where the registrant is claiming conscientious objector status. "A sincere claimant for conscientious objector status cannot turn to the habeas corpus remedy (to challenge the legality of his classification) because his religious belief prevents him from accepting induction under any circumstances. As a result he is limited to seeking review in a criminal trial for refusal to submit." United States v. Freeman, 388 F.2d 246, 248–249 (C.A. 7th Cir. 1967).

(398 U.S. 410, 416–417, 90 S.Ct. 1766, 1771.)

We find none of these waiver arguments compelling, at least not under the facts in this case. As to the trial court's apparent reasoning we need only reiterate that Gruca pursued his administrative remedies with the Selective Service prior to notice of induction and that, whatever the Army might think, a registrant may challenge the denial of an exemption after induction by filing for habeas corpus relief. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Even if Gruca had the right to seek habeas corpus relief after induction, the Government argues, he waived the right by failing to pursue it for seven months. We disagree. There may be situations where a registrant does waive his right to seek judicial review of his board's refusal to grant him an exemption, but this is not such a case. The number of months which elapsed was only seven and in that period of time Gruca underwent basic training for two months and, for the remaining five, attempted to get a discharge from the Army. Gruca did not behave in the dilatory fashion generally associated with a charge of laches; he had little choice, once he had submitted to induction, but to go through basic training. From all reports, that is not an experience which permits a lot of free time for legal maneuvering. Neither do we think that Gruca acted unreasonably in choosing to pursue the discharge remedy made available by the Army to conscientious objectors; if his claim had succeeded, it would have been just as effective as a successful attack on the Board's refusal to classify him a conscientious objector. We are not inclined to penalize him for the delay inherent in making this choice

and thus we hold that, under the circumstances, he did not waive his right to petition for habeas corpus relief afterwards by first seeking a discharge from the Army.

We also reject the argument based on the Supreme Court's reference in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). It is true that many sincere claimants for conscientious objector status may decide that refusing to submit to induction is the only course their conscience leaves open; but it does not follow logically from this that every registrant who submits to induction is not sincere. After all, the risks involved in refusing induction and submitting to criminal prosecution are substantially greater than those involved in submitting to induction and then filing for habeas corpus. One who fails to convince the authorities of the sincerity of his beliefs is in considerably worse trouble in the former situation than in the latter. As we have said, the consciences of some men may force them to take this risk; we hesitate to imply, however, that the mere act of taking the risk is evidence of the registrant's sincerity and that not taking the risk is evidence of insincerity. Such a finding, it seems to us, would make considerably more cruel the dilemma facing a man who is considering a conscientious objector claim. As a practical matter he would be forced to refuse induction in order to prove the sincerity of his beliefs. If he was not willing to subject himself to criminal prosecution, perhaps fearing that he would not be able to establish the sincerity of his beliefs, he would have to abandon his claim. There is no sound reason why this should be so, since a registrant should have the right to attempt to prove the sincerity of his claim without risking the obloquy of a prison term if he is unsuccessful.

Our overall view on these procedural questions is informed by the nature of the proceedings which are involved. These are not legal contests in the strict sense, where the parties are presumd to have competent legal counsel to advise them at each step along the way, and thus we hesitate to approach the procedural problems which arise with the same sense of technical nicety that we might bring to a review of courtroom proceedings. Instead we look to see whether justice has been done to a particular registrant by a particular Board, taking into consideration the practical limitations of each. Unless an error in procedure has so infected the course of events as to make a just result unlikely, we see no point in according the error controlling weight. Adapting that approach to the appellant Gruca, we observe that he was only a nineteen year old high school graduate who was working as a pipefitter when his troubles with the draft Board began. It would be unjust to expect him to have mastered the intricacies of the draft laws and equally unjust to expect him to have mastered the sangfroid to refuse induction on the ground of conscientious objection. It takes a great deal of nerve and self-possession to decline to step forward and proclaim an oath when all the other draftees are doing so quickly and without question. There may be claimants for conscientious objector status, perhaps even a good number of them, who have the sophistication to make an intelligent choice among the alternatives made available in this area and, as to these men, justice may permit a more strict test of procedural propriety. Since Gruca quite obviously falls short of that mark, however, we have viewed with a degree of indulgence his efforts to establish his claim.

Turning to the merits of Gruca's classification request, we apply the same rule that the proceedings of the Selective Service, notwithstanding the gravity of the decisions made, are not measured by the standards applied to courtroom business. We accord the Board some leeway, in other words, just as we accord some leeway to the registrant. The way in which the Selective Service system was designed seems to require this rule. When Congress established a system based on local boards staffed by men and

women drawn from the whole spectrum of a community's leaders, it obviously did not expect the boards to function with the precision of a court. Apparently it was felt that the gains to be won from a local process would outweigh the risks involved in entrusting such technical matters to a nonprofessional body. We have no power to alter this congressional plan directly, and we will not do so indirectly by imposing burdens which an ordinary, conscientious draft board would be unable to carry. We will not reverse the trial court's decision affirming the Board's action, therefore, even though we are disturbed by the Board's failure to articulate in some detail the reasons for its decision. Regardless of the Board's failing in this regard, there is a basis in the record for its action and there the matter ends.

Before discussing the basis in the record for our holding, it is well to point out a distinction between this case and several recent Supreme Court cases dealing with conscientious objectors. Here the question is not the nature of the registrant's beliefs and whether these beliefs constitute conscientious objection within the meaning of the statute, but rather the question is whether Gruca was sincere in professing to adhere to the beliefs he cited. Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), in contrast to the instant case, presented no question about the sincerity and depth of the registrants' beliefs; the controversy revolved around whether those beliefs constituted conscientious objection within the intendment of the statute. In deciding Gruca's claim the Board stopped at the threshold question of sincerity and therefore it was unnecessary for the Board to consider whether the content of his professed beliefs entitled him to the exemption.

The raw material out of which the Board built its decision was primarily Congress' definition of a conscientious objector and the information supplied by Gruca both on the forms he filed with the Board and during his personal interview. As for the definition, Section 6(j) of the Military Selective Service Act of 1967, 50 App. U.S.C. § 456(j), provides:

Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code.

Gruca attempted to come within this definition in response to questions posed by Selective Service Form 150. He there stated that he believed in a Supreme Being who "said that all people was [sic] to be created equal [and] to love thy neighbor." (App. 36.) Gruca's belief was derived "from [his] parents and neighbor by talking to them that it is wrong to kill and fight." (App. 37.) When asked for his views on when force could be used and for examples from his own experience which reflected the depth of his convictions, he replied that he would use force to stop a fight where "two people was [sic] in a fight with one" and he stated: "At work, the workers I work with start arguing with me about little things, so I tell them they can argue all the [sic] want because of my religious beliefs of it wrong." (App. 37.) Although he was not a member of any religious sect or organization, Gruca indicated that the religious background of his father was Catholic and that of his mother was Protestant. (App. 38.)

In addition to Gruca's answers on the Form 150, the Board was able to consider his demeanor at the personal interview. The complete text of the notes taken by the Board's secretary during the interview are reproduced below.[2] An exami-

2. The text of Gruca's appearance before the Board is as follows:

Stanley appeared before the board, at the local board's request, this was not a

nation of this record, the accuracy of which Gruca does not challenge, reveals that the Board concentrated its attention on the fact that Gruca had delayed in claiming conscientious objector status for some months after he first registered with the Board. Previously Gruca had written the Board concerning this delay, stating that "[t]he reason why I did not fill [the form 150] out when I was 18 is because I was thinking about this." (App. 40.) During the interview Gruca further explained that he had come to believe that violence was wrong "about a year or a year and a half" before his appearance but that there was no "sign or happening" that caused him to change his views "except that his mother had told him * * * that all violence was wrong, against any living thing." (App. 42.) Perhaps significantly, however, Gruca also said that he liked to fish and hunt occasionally and that he would use force to protect himself if it was required. (App. 42.)

Without giving a detailed explication of its reasons, the Board denied the classification. It would certainly have been better if the Board had pinpointed, as best it could, why it concluded that Gru-

ca was not "by reason of religious training and belief * * * conscientiously opposed to participation in war in any form." For reasons we have already discussed, however, we do not think it appropriate to require a local board to adhere to any particular formula in reporting its decisions. It is enough if there is evidence in the record from which we can garner the basis of the Board's action, and we are satisfied of being able to do so here.

First, the Board had an opportunity to observe the registrant in person and was entitled to draw conclusions from his demeanor as he presented his views. That is one of the values inherent in a personal confrontation and, of course, it represents an advantage the Board has over a reviewing court. Additionally, the Board gave some weight to the fact that Gruca's was "a very recent decision"; it was legitimate for the Board to find that this had some bearing on Gruca's sincerity. It also was significant that Gruca's recent conversion was based on a conversation with his mother even though he and his mother had never before discussed the subject. Moreover, the Board was entitled to infer a lack of sincerity

procedural right, but in accordance with regulations. The registrant was asked to explain his reason for requesting a deferment as a Conscientious Objector. He did not request SSS Form 150 at age 18, or sign the C. O. Series on his SSS Form 100, original questionnaire. The registrant stated that he did not believe in any acts of violence. He does not have any religious affiliation but his parents have a Roman Catholic background. The registrant has two older brothers who are in the National Guard.

The registrant likes to fish and hunts occasionally. He was asked how long he had felt this way concerning violence. He stated that he has had these feelings for about a year or a year and a half. This was his feeling when he took his pre-induction physical examination but he did not make a statement at that time. Mr. Gruca was asked if there was any sign or happening that changed his mind or caused him to become a conscientious objector. He said that there was none, except that his mother had

told him, about a year ago, that all violence was wrong, against any living thing. The registrant was asked if he were willing to obtain Civilian Work in lieu of induction into the Armed Forces, he replied that "he guessed", he would, but he did not know.

He was asked, "if it required violence to protect yourself, would you use violence?" he replied, "I would use force." His appeal rights were explained to him and he was excused.

The board discussed the registrant's appearance. They determined that this was a very recent decision and according to the registrant, followed a conversation between his mother and himself, taking place within the last year. They had never discussed this subject before that, and he had never given much thought to the subject. The registrant was very quiet and information was difficult to obtain, he either could not or would not express himself in any way. The board classified him in 1-A with appeal rights.

from the fact that Gruca himself "had never given much thought to the subject." (App. 42.) Finally the Board emphasized the difficulty it had in obtaining information from the registrant and noted that "he either could not or would not express himself in any way." (App. 42.)

█ The question is whether these observations constitute a basis in fact for the Board's finding; we think that they do. The Supreme Court has said that in this type of case "any fact which casts doubt on the veracity of the registrant is relevant." Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955). Therefore, although no one of the facts relied on by the Board is conclusive, each is a relevant aspect of a total picture of insincerity. This admittedly is a tenuous process which largely depends on nuances of language and of conduct, but, as the Supreme Court has pointed out:

> Aside from an outright admission of deception—to expect which is pure naivety—there could be no more competent evidence against [a registrant's] claimed classification than the inference drawn from his own testimony and conduct.

Witmer v. United States, 348 U.S. 375, 383, 75 S.Ct. 392, 396 (1955).

Although we are confident that there was a factual basis for the Board's finding that Gruca lacked sincerity, a troubling suspicion is kindled by the final remark recorded in the transcript of Gruca's personal appearance before the Board. It will be recalled that the Board noted that Gruca "was very quiet and information was difficult to obtain, [and] he either could not or would not express himself in any way." (App. 42.) When we consider this observation in tandem with the clumsiness of Gruca's written views, we are led to suspect that Gruca was badly handicapped through lack of education in his attempt to establish his claim. The record also contains letters written to the Board by the registrant's mother and by a neighbor;[3] these suggest a similar inability to articulate the sophisticated ideas which make up a claim for conscientious objection. If the Board denied Gruca the desired status because it mistook his inability to express himself for an unwillingness to do so, or if Gruca was simply unable to make a convincing presentation because of his lack of education, then we cannot pretend that justice has been done.

This is only a single instance of a recurring problem. There is a real risk that the conscientious objector classification has become a shelter reserved exclusively for the glib or well educated registrant who has learned how to speak the language of sincerity. Since it is obvious that the sincerity of a registrant's belief is not, in theory, a function of his education or of his ability to express himself, this exclusivity is intolerable. Unless local boards are very careful, however, it will develop as a practical matter that a registrant's sincerity

---

3. The complete text of Gruca's mother's letter is as follows:

I am writing in reference to Stanley being a conscientious objector of the Armed Forces.

He has always been against fighting and violence.

He never liked to argue or to have anyone else argue in his presence's [sic].

He never liked to see anything die. It didn't make any difference if it was a person an animal or a bird.

He has always been very conscious about anything dieing [sic].

He thinks all this killing and violence is just terrible.

A neighbor of Gruca, a Mrs. Vonnie Tackett, wrote the following:

I'm writing in reference to Stanley Gruca who is my next door neighbor as being a Conscientious objector. I have talked to him several times and I find he just doesn't want any part in fighting or violence and he sure doesn't believe in killing and he's a very nice Boy and I can see why he doesn't want to leave a good home to go off to some foreign land to kill or get killed. Thank you.

is determined by his ability to appear sincere. For the purpose of emphasizing this danger, but without reflecting in any way on the sincerity of the particular registrants involved, we have reproduced below portions of letters from registrants to their boards; these differ markedly from those submitted by Gruca. Thus in United States v. Seeger the court quotes from the registrant's letter to his draft board:

> My decision arises from what I believe to be considerations of validity from the standpoint of the welfare of humanity and the preservation of the democratic values which we in the United States are struggling to maintain. I have concluded that war, from the practical standpoint, is futile and self-defeating, and that from the more important moral standpoint, it is unethical.

(326 F.2d 846, 848 (2d Cir. 1964)).

Consider also the following excerpt from what the Supreme Court described as "a long and thoughtful letter  *  *  in which [the registrant] declared that his beliefs were 'certainly religious in the ethical sense of the word.'" Welsh v. United States, 398 U.S. 333, 341, 90 S.Ct. 1792, 1797, 26 L.Ed.2d 308 (1970). A portion of that letter read:

> I believe I mentioned taking of life as not being, for me, a religious wrong. Again, I assumed [that the hearing examiner] was using the word "religious" in the conventional sense, and in order to be perfectly honest did not characterize my belief as "religious".

On a different question, the registrant's thoughts were similarly well-phrased:

> I believe that human life is valuable in and of itself; in its living; therefore I will not injure or kill another human being. This belief (and the corresponding "duty" to abstain from violence toward another person) is not "superior to those arising from any human relation." On the contrary: *it is essential to every human relation.* I cannot, therefore, conscientiously comply with the Government's insist-

ence that I assume duties which I feel are immoral and totally repugnant.

For purposes of contrast, we repeat Gruca's views on the same general questions:

> The Supreme Being said that all people was [sic] to be created equal and to love thy neighbor. That is my belief. (App. 36.)

> I cannot consciously or morally take the life of another human being, because of my beliefs.

> \*　\*　\*　\*　\*　\*

> If I am sent someplace where it is called war and I kill someone that is allright, and if I go out on the road and kill someone they call me a murderer.

(App. 44.)

Can there be any doubt that the other two registrants, irrespective of the sincerity of their beliefs, had a significant advantage over Gruca because of the facility with which they expressed themselves? Unfortunately there will always be inequities between registrants, particularly as to education, and these will be accentuated when the exemption sought is conscientious objection which is purely a state of mind. Perhaps the danger of this prejudice among different local boards is alleviated somewhat by the fact that the board members come from the same area, by and large, as the registrants. Thus Gruca's Board in Ravenna, Ohio would not expect the same degree of sophistication as might a board in New York City, and the members of his Board should be attuned to his vocabulary and mode of expression. This argument cannot be taken too far, of course, for there are likely to be more sophisticated registrants than Gruca in every board, no matter where it is located. All we can do to minimize the injustice involved is to bring it to the attention of the local boards and to emphasize the need to consider this, along with all other factors, in evaluating a registrant's claim.

Without derogating from the importance of this factor in the proceedings

involving Gruca, we have concluded, after an exhaustive review of the record, that there were facts not dependent on Gruca's ability to express himself which provide a basis for the Board's finding. The limits of our review function preclude us from tampering with the result. Accordingly, the decision of the trial court dismissing the petition for a writ of habeas corpus is affirmed.

Affirmed.