UNITED STATES of America,
Appellee,

v.

John Charles WAINSCOTT,
Appellant.

No. 72–1988.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1973.

Decided April 25, 1974.

George S. Daly, Jr., Charlotte, N. C. [court-appointed counsel] for appellant.

David B. Sentelle, Asst. U. S. Atty., W. D. N. C. (Keith S. Snyder, U. S. Atty., and Hugh J. Beard, Jr., Asst. U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WINTER, CRAVEN, BUTZNER, RUSSELL, FIELD, and WIDENER, Circuit Judges, sitting in banc.

BUTZNER, Circuit Judge:

The principal question raised by this appeal is whether a selective service order of induction, issued before the Draft Extension Act of 1971, is valid when an appeal board has assigned the reason for its decision, but the local board has failed to state why it denied the registrant's claim. In United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970), we held that when a registrant establishes a prima facie case for classification as a conscientious objector, the local board must disclose why it rejected the registrant's claim.[1] Disclosure of the reasons for the board's decision, we concluded, was essential to effective judicial review. We now hold that the local board's failure to state the basis of its decision casts such a flaw on administrative review that the omission cannot be remedied by the appeal board's statement of its reasons for denying the claim. Accordingly, we find the order of induction to be invalid and reverse the conviction of John Charles Wainscott for refusing to submit to induction.

I

Wainscott registered with the Selective Service System on July 21, 1966,

and was given a student, II–S, classification six months later. After receiving a series of student deferments, his II–S classification expired on October 15, 1969. On January 5, 1970, he was reclassified available for induction, I–A, and on January 15 was informed of his right to a personal appearance before his local board and his right to appeal, neither of which he exercised. After undergoing a physical examination on February 13, he was notified on March 9 that he was acceptable for service. A month later he requested SSS Form No. 150 for conscientious objectors, which he submitted on May 8.

In his conscientious objector questionnaire, Wainscott described his religious beliefs as follows:

"I believe that to harm or destory any human being is to endanger any hope for peace; more important, it is morally unpardonable and, for me, impossible. Therefore I cannot and will not participate in any form of combat. This is a fundamental part of my entire moral code."

In response to a question concerning the source of his religious beliefs, he replied:

"I began thinking along these lines at the age of 13 or 14 when, after studying and discussing various religious aspects, I reasoned that man—not a supreme being—controls his own actions. Thus it was apparent that with no god and no fate, man must himself maintain peace, and to do so he must not destroy any fellow man. Any action against another human being endangers any hope for peace and is therefore unpardonable. Aside from my own private thinking, I was influenced toward this decision by discussions with many people and by read-

1. Other cases reaching the same conclusion include: United States v. Edwards, 450 F.2d 49 (1st Cir. 1971); United States v. Stewart, 478 F.2d 106 (2d Cir. 1973); United States v. Speicher, 439 F.2d 104 (3d Cir. 1971); United States v. James, 417 F.2d 826 (4th Cir. 1969); United States v. Stetter, 445 F.2d 472 (5th Cir. 1971); United States v. O'Bryan, 450 F.2d 365 (6th Cir. 1971); United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970); United States v. Abbott, 425 F.2d 910 (8th Cir. 1970); United States v. Jamison, 463 F.2d 1219 (9th Cir. 1972); cf. United States v. Pacheco, 433 F. 2d 914 (10th Cir. 1970). But cf. Gruca v. Secretary of the Army, 141 U.S.App.D.C. 85, 436 F.2d 239 (1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971).

ing such works as the Bible, the Bhagavad Gita, and readings from Ghandi."

To the question, "To what extent does your religious training and belief restrict you from ministering to the sick and injured, either civilian or military, or from serving in the Armed Forces as a noncombatant without weapons?" Wainscott replied:

"I have never been opposed to helping another human being. A noncombatant position would not be in opposition to my beliefs—provided that it would be truly noncombatant in every sense of the term."

He noted that he had expressed his views to acquaintances and that he had started a thesis on the subject while attending college. He also submitted letters from his parents and two other persons attesting to the nature and sincerity of his beliefs.

Shortly after Wainscott applied for classification as a conscientious objector, the board requested an interview. From the executive secretary's notes it appears that when a member of the board observed that Wainscott was requesting noncombat status, Wainscott replied that he must have made a mistake as he thought noncombat meant no service at all. Asked when the change in status occurred, he stated no change had occurred—that he didn't read the forms very carefully and that the statement he made with regard to serving as a noncombatant meant no service of any kind.

With respect to Wainscott's religious beliefs, the secretary's notes reflect that he claimed no strong religious background and added that he thought religion was just a code of ethics; that he does not believe there is a Supreme Being, and that in order to prevent chaos you should treat people as you want them to treat you. He added that the worst thing to do to start chaos was killing and that he couldn't conceive of

killing. He reiterated that he thought it was morally wrong to go to war. This, he said, involved a personal code. On being questioned about his conclusion that there was no "hereafter," he stated that he started to think about this when he was twelve and he came to the conclusion when he was about eighteen or nineteen years of age. He acknowledged that he did not attend church now, although formerly he did.

During the interview, he ascribed his delay in filing his application to advice from friends that he need not seek classification as a conscientious objector when he held a II–S deferment. When the board sought to plumb the depth of his beliefs by confronting him with the alternative of induction or jail, he stated that he guessed it would have to be jail.

Without stating its reasons, the board refused to classify Wainscott as a conscientious objector. Wainscott filed an administrative appeal, which was denied with the following statement:

"This appeal board is of the opinion that the record shows registrant's beliefs lack sufficient sincerity to constitute the necessary elements of conscientious objection. Attention is invited to conflicts in statements by registrant to the record. Accordingly, he is continued in Class I–A."[2]

After Wainscott refused to be inducted into the army, he was convicted of violating 50 U.S.C. App. § 462 (1972). On appeal, his principal assignment of error is that the failure of the local board to disclose the reasons for rejecting his claim invalidated the underlying order of induction. A panel of this court, assuming that Wainscott had presented a prima facie case for conscientious objection and deeming a statement of the appeal board's decision sufficient to validate the order, held that there was a basis in fact for Wainscott's classification and affirmed his conviction. We granted rehearing in banc

---

2. As an alternative assignment of error, Wainscott asserts that the statement of the appeal board is conclusory and thus insufficient. In view of our disposition of the case, we need not consider this issue.

principally to consider whether the appeal board's statement remedied the local board's silence.

## II

The government, pointing out that an appeal board can classify *de novo,* argues that an appeal board's statement of reasons for the registrant's classification is sufficient to enable a court to review the registrant's claim. This contention, however, addresses only the necessity of an adequate record for judicial review. It overlooks the important function of administrative review.

■ Judicial review of selective service classifications is extremely limited. If the board's order has a basis in fact, it must be sustained. 50 U.S.C. § 460(b)(3) (1972); Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946). On the other hand, an appeal board is not so narrowly restricted. It can classify anew. 50 U. S.C. § 460(b)(3) (1972); 32 C.F.R. § 1626.4(h) (1973); United States v. Verbeek, 423 F.2d 667, 668 (9th Cir. 1970). The fair operation of the system, therefore, depends in no small part on "the opportunity for full administrative review." Mulloy v. United States, 398 U. S. 410, 416, 90 S.Ct. 1766, 1771, 26 L. Ed.2d 362 (1970). Recognizing that in the usual case an appeal board's classification is final, the Supreme Court held under procedures formerly in effect, that a registrant was entitled to a copy of the Department of Justice's recommendation so he could effectively present his case to the appeal board. Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955).

■ Although the Department of Justice no longer presents its recommendation in conscientious objector appeals, the need for the registrant to know the basis of the ruling against him has not lessened. Under regulations in effect at the time of Wainscott's appeal, a registrant could submit a written statement "specifying the matters in which he believes the local board erred."[3] Without being informed of the local board's reasons for denying his claim, a registrant's opportunity for filing an effective statement on his administrative appeal has been aptly described as "no more than a stab in the dark." United States v. Edwards, 450 F.2d 49, 52 (1st Cir. 1971). Furthermore, the local board's silence compels the appeal board to speculate about the basis of the local board's decision. This, too, impedes administrative review. *Cf.* Smith v. United States, 157 F.2d 176, 182 (4th Cir. 1946) (dictum). In sum, the reasons that have persuaded a majority of the courts of appeals to require local boards to articulate the basis of their decisions for the purpose of facilitating judicial review apply as cogently to administrative review. *See* United States v. Speicher, 439 F.2d 104, 108 (3d Cir. 1971).

Although the Supreme Court has not expressly decided the issue before us, it vacated a judgment of conviction in Lenhard v. United States, 405 U.S. 1013, 92 S.Ct. 1296, 31 L.Ed.2d 477 (1972), and remanded the case for consideration in the light of a memorandum of the Solicitor General that addressed the problem.[4] Lenhard's local board never disclosed its reasons for denying his classification as a conscientious objector to the appeal

3. 32 C.F.R. § 1626.12 (1970).

The Draft Extension Act of 1971 and regulations promulgated to implement it significantly extend the registrant's procedural rights on administrative appeal. The registrant is now entitled to appear before the appeal board, and the appeal board may consider both oral statements and written evidence submitted by the registrant during his personal appearance. 50 U.S.C. App. § 471a(b)(1) (1972); 32 C.F.R. §§ 1626.3(c), 1626.4(g)(3) (1973).

4. Extracts from the Solicitor General's memorandum are published in United States v. Stewart, 478 F.2d 106, 112 (2d Cir. 1973). The memorandum was not called to our attention until after the panel's decision in Wainscott's case was announced. *Stewart* narrates the history of the *Lenhard* litigation. *See also,* United States v. Lenhard, 437 F.2d 936 (2 Cir. 1970); 455 F.2d 1406, 2 Cir.; and 461 F.2d 1268 (2d Cir. 1972).

board. However, his conviction was affirmed by the court of appeals after the local board ultimately disclosed its reasons to the district court. In response to the petition for certiorari, the Solicitor General informed the Court that in his opinion the failure of the local board to disclose its reasons to the appeal board had denied Lenhard effective administrative review. The Court then vacated the judgment, and the court of appeals reversed the conviction. The factual aspects of *Lenhard* differ, but the principles expressed by the Solicitor General are fully applicable to Wainscott's case.

We conclude, therefore, that the failure of a local board to state why it rejected a registrant's prima facie claim denies the registrant the opportunity for full administrative review. This procedural defect is of sufficient importance to invalidate the order of induction notwithstanding the appeal board's assignment of reasons for its rejection of the claim.

5. *See* United States v. Wood, 454 F.2d 765, 767 (4th Cir. 1972).

The Draft Extension Act of 1971 codified the rule of decision pertaining to a statement of the reasons for the decision of the local board, but in doing so it eliminated the necessity for the registrant to establish a prima facie case in order to obtain the statement. Title 50 U.S.C. App. § 471a(b)(4) provides:

"In the event of a decision adverse to the claim of a registrant, the local or appeal board making such decision shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision."

The regulations place an unconditional duty on the board to state its reasons after a personal appearance or when the board has refused to reopen and reconsider the registrant's classification. 32 C.F.R. §§ 1624.6 and 1625.4 (1973). The appeal board is also unconditionally required to record its reasons for denying a registrant the classification he requested. 32 C.F.R. § 1626.4 (1973).

6. Title 50 U.S.C. App. § 456(j) (1972) provides in part:

"Nothing contained in this title . . . shall be construed to require any person

## III

Until the passage of the Draft Extension Act of 1971, a local board did not need to articulate its reasons for denying a registrant's claim unless the registrant proved a prima facie entitlement to the classification he sought.[5] Relying on the pre-1971 rule, the government contends that the silence of the local board is of no import because Wainscott did not prove a prima facie case. He does not meet the statutory qualifications, the government says, because his emphasis on peace evidences a political, not a religious, basis for his objection to war.[6]

We cannot ascribe such a narrow interpretation to Wainscott's beliefs. The search for peace is not universally deemed to be a peculiarly secular venture. Moreover, one who is morally opposed to war is quite likely to express his belief affirmatively by using the antonym of war, which is peace. Wainscott, however, does not rest his opposition to war on his hope for peace. More important than this hope, he avers, is

to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

This statute was construed in Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810 (1971) as follows:

"In order to qualify for classification as a conscientious objector, a registrant must satisfy three basic tests. He must show that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168. He must show that this opposition is based upon religious training and belief, as the term has been construed in our decisions. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. And he must show that this objection is sincere. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428."

his conviction that destruction of human life is "morally unpardonable." Wainscott's opposition to war is neither equivocal nor selective. His disavowal of belief in God and immortality does not disqualify him.[7] Describing the nature of his belief, he wrote his local board:

> "I believe that to harm or destroy any human being is to endanger any hope for peace; more important, it is morally unpardonable and, for me, impossible. Therefore I cannot and will not participate in any form of combat. This is a fundamental part of my entire moral code."

United States v. Seegar, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), prescribes a means for determining whether a registrant's beliefs are religious within the meaning of the Act:

> "The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition." 380 U.S. at 176, 85 S.Ct. at 859.

In Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), the Court was called upon to apply this test to a registrant who had struck from his application the statement that his belief was based on "religious training," but who nevertheless had affirmed that he believed killing was morally wrong. The Court reversed Welsh's conviction and, amplifying Seegar, said:

> "What is necessary under Seegar for a registrant's conscientous objection to all war to be 'religious' within the

meaning of § 6(j) is that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions." 398 U.S. at 339, 90 S.Ct. at 1796.

██ Wainscott's statement that the destruction of a human being is "morally unpardonable" affirms that he believes the taking of human life is morally wrong. An act that is "morally unpardonable" is indeed an ultimate moral wrong. His assertion that such an act is "impossible" for him to perform is consistent with his resolution to accept jail rather than induction. Wainscott's acknowledgment that his belief involves a personal code does not disqualify him. *Welsh* requires us to equate a personal moral code with a religious belief if the "individual deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time . . . ." 398 U.S. at 340, 90 S.Ct. at 1796. Wainscott's beliefs accord, therefore, with the tests prescribed by *Seegar* and *Welsh*.

██ ██ Finally, as *Welsh*, 398 U.S. at 342, 90 S.Ct. 1792 also explains, a registrant is not ineligible for classification as a conscientious objector if, in addition to beliefs which qualify under the statute, he expresses his views on political affairs. Therefore, even if Wainscott's discussion of peace discloses a desire for an absence of war in the political sense, as the government suggests, he has nevertheless established a prima facie case for exemption.[8]

---

7. Local Board Memorandum No. 107 [4 SSLR 2200:16], issued July 6, 1970, provides in part:
   "The term 'religious training and belief' as used in the law may include solely moral or ethical beliefs, even though the registrant himself may not characterize these beliefs as 'religious' in the traditional sense, or may expressly characterize them as not 'religious.'
   "The registrant need not believe in a tradi-

tional 'God' or a 'Supreme Being' to be considered favorably."

8. Local Board Memorandum No. 107 [4 SSLR 2200:16], issued July 6, 1970, provides in part:
   "11. A registrant who is eligible for conscientious objection on the basis of moral, ethical, or religious beliefs is not excluded from the exemption simply because those beliefs may influence his views concerning the nation's domestic or foreign policies."

The appeal board, apparently satisfied with the nature of Wainscott's beliefs, disqualified him because he lacked "sufficient sincerity." It premised this conclusion on unspecified conflicts in his statements. In the absence of any indication of the statements which the appeal board considered inconsistent, the government suggests that Wainscott's position on noncombatant service depicts his insincerity. In his application, Wainscott wrote "a noncombatant position would not be in opposition to my beliefs—provided that it would be truly noncombatant in every sense of the term." However, at his personal appearance, he stated that he was not requesting noncombatant status. Queried, he explained that he must have made a mistake as he thought noncombat meant no service at all.

To support its charge of insincerity, the government relies on Witmer v. United States, 348 U.S. 375, 382, 75 S. Ct. 392, 99 L.Ed. 428 (1955), where the Court, in rejecting a claim for classification as a conscientious objector said:

> "[I]nconsistent statements in themselves cast considerable doubt on the sincerity of petitioner's claim . . . it goes to his sincerity and honesty in claiming conscientious objection to participation in war."

In *Witmer,* however, the Court was not dealing with the elements of a prima facie case. The Department of Justice, acting under procedures then in existence, had given its reasons, including inconsistencies in the registrant's position, for recommending denial of the claim. Thus, the Court was concerned solely with determining whether there was a basis in fact for the board's decision.

■ Here, if the local board had specified the reasons why it rejected Wainscott's claim, the record might well present a basis in fact that would sustain its decision. But this is not the issue now before us. The difficulty with the government's position is that neither the registrant, the government, the appeal board, nor this court knows whether the local board considered Wainscott to be insincere. The board may have thought that he was sincere but misguided in the nature of his beliefs. We do not even know whether the local board considered his remarks about noncombatant service to be inconsistent. The board, noting his education, may have thought his explanation was not credible, that his remarks were inconsistent, and that he was therefore insincere. On the other hand, realizing that a noncombatant may be, according to one definition in common usage, "a person who is not a combatant; a civilian in time of war,"[9] the local board may have accepted his explanation that he was thinking of a noncombatant in terms different from those commonly used by the selective service system. Since Wainscott's remarks are susceptible of conflicting interpretations, we cannot rule as a matter of law that they destroy the prima facie case which he otherwise established. Whether his explanation was sincere or deceptive depends on the inferences that one draws from the facts. It was, however, the province of his local board, not the appeal board or the courts, initially to assay the facts and the inferences that reasonably can be drawn from them. Regardless of how carefully this procedure was conducted, the local board's failure to articulate its finding frustrated review. Indeed, this is precisely the type of case to which Judge Winter referred in United States v. Broyles, 423 F.2d 1299, 1304 (4th Cir. 1970), when he said:

> "Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant

---

9. *Random House Dictionary of the English Language* 972 (unabridged ed. 1971). *See* also, *Webster's International Dictionary* 1535 (3d ed. 1964).

incredible, or insincere, or of bad faith, and why."

We conclude, therefore, that the board's order of induction was invalid and Wainscott's judgment of conviction must be reversed.

ALBERT V. BRYAN, Senior Circuit Judge (dissenting):

I. I question the proposition laid out immediately and explicitly in the majority opinion as: "The local board's failure to state the basis of its decision casts such a flaw on administrative review that the omission cannot be remedied by the appeal board's statement of its reasons for denying the claim". Forthrightly, too, the opinion concedes that the Supreme Court has not decided the issue.

Reliance is rested by the majority upon inference from the remand of Joseph v. United States, 438 F.2d 1233 (3 Cir. 1973), 405 U.S. 1006, and United States v. Lenhard, 437 F.2d 936 (2 Cir. 1970), 405 U.S. 1013, 92 S.Ct. 1296, 31 L.Ed.2d 477 by the Supreme Court "for consideration" on the Solicitor General's anatomizing memorandum, which is set out in United States v. Stewart, 478 F. 2d 106, 112 (2 Cir. 1973). Also cited is United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970, en banc). Interestingly, unlike the case at bar, in none of these precedents were *any* reasons given for the appeal board's decision. Nor did the Solicitor's memorandum refer to the weight to be accorded the opinion given on the review. Hence I do not feel presumptuous in engaging the majority's proposition.

To begin, the purpose of the appeal board is seemingly overlooked by the majority; indeed, it is treated as an impotent entity. Its predominant function is, of course, to scan the proceedings of the local boards for illegalities in the classification of registrants. 32 CFR § 1626.23 (1969 Supplement). It is the place for complaints of the local board's actions. Otherwise it would have no reason for being. To this end, the appeal board is empowered to classify or reclassify a registrant. Id. § 1626.26.

This power, in my judgment, authorized the appeal board to correct the local board's omission of its reasons for the classification of Wainscott by itself classifying him. Particularly is this so under the majority's view that the omission had the ultimate effect of nullifying the classification by the local board. Further indication of the breadth of the appeal board's remedial supervision of the first classification is found in § 1626.23, directing appeal boards to check carefully "whether the record is complete" and, if necessary, to return the file to the local board for completion.

But Wainscott protests, and the majority holds, that the omission impairs his appeal right and thus vitiates the local level classification. The argument, first, is that absent reasons the appellant cannot counter the local's decision —that the right of appeal is then no longer "meaningful" (by now a fatigued adjective). Additionally, it is said that without knowledge of the reasons the appellant cannot exercise the privilege of attaching to his appeal a statement— important because he cannot appear in person—specifying wherein he believes the local board erred.

These assertions, though plausible, are not sound. Wainscott had intimately known *all* the material that went before the local board and the questions to be resolved. The entire case is made up of only a brief record, readily carried in mind. He clearly demonstrated he was perfectly capable of prosecuting his claim in that tribunal. Nothing not then known to him could be included by the appeal board in its consideration. It was forbidden by the regulations to go beyond what he had placed or knew was before the local board. Id. § 1626.24. As for his statement, it would necessarily embrace all the assertions he had already put in the record by letters or had said on occasion. He was, of course, altogether aware of his contentions from the very beginning and throughout. What the absence of reasons could

amount to in imagined circumstances is merely academic. It was an elementary and uncomplex proceeding and only by suppositions can a deprivation of rights or privileges be imposed upon it.

Finally, it is pressed that even if permissibly remedial, the appeal board's statement of reasons was insufficient. It said:

"This Appeal Board is of the opinion that the Record shows registrant's beliefs lack sufficient sincerity to constitute the necessary elements of conscientious objection. Attention is invited to conflicts in statement by the registrant in the Record. Accordingly, he is continued in class I–A."

For me this is a plain, understandable statement. Its entire content is reasons. All reasons embody some conclusions, but the board's summary cannot be denied legitimacy under the brand of "conclusions". The suppositions advanced of what basis the board could possibly have used are nothing but imageries. There is no occasion for pondering the board's ratio decidendi; it speaks for itself. Such surmises are banished by the board's stark, bold, explicit characterization of Wainscott's claims. There is no doubt or equivocation about the conflicts. They are obviously comprised of the two outstanding contradictions in the administrative proceedings: The first was that (1) "non-combatant position would not be in opposition to my beliefs—provided that it would be truly non-combatant in every sense" and (2) later that his principles would not permit of non-combatant service. I find no other conflicting *"statements"*. Certainly the expositions of his religious beliefs, while uncommon, are not inconsistent inter se.

Criticism is directed to the quotations in our first opinion from Witmer v. United States, 348 U.S. 375, 75 S.Ct. 42, 99 L.Ed. 640 (1955), on the destructive impact of conflicting statements upon the sincerity of a registrant's candidacy for CO classification. The reproof is that the Supreme Court was speaking in a different context. However, its words read impressively on the present circumstances. At all events, they are credibility precepts of the Supreme Court, classic in any situation.

II. As the majority notes, in the original opinion the decision was conditioned on the assumption that Wainscott had tendered a prima facie case and, so assuming, the opinion concluded that the appeal board's finding that the registrant's beliefs lack sincerity was sufficient to justify denial of CO classification to him. Inasmuch as the majority now overrules this conclusion, complete consideration of this case requires exploration, as the majority does, of the assumption's correctness.

Section 6(j) of the Selective Service Act, 50 U.S.C.A. App. § 456(j), so far as pertinent here, provides:

"Nothing contained in this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code . . . ."

In regard to his conscientious objections to war, the majority recalls, Wainscott stated:

"I began thinking along these lines at the age of 13 or 14 when, after studying and discussing various religious aspects, I reasoned that man—not a supreme being—controls his own actions. Thus it was apparent that with no god and no fate, man must himself maintain *peace,* and to do so he must not destroy any fellow man. Any action against another human being endangers any hope for *peace* and is

therefore unpardonable." (Accent added.)

In his interview with the board, he said "that he had no strong religious background and that he thought religion was just a code of ethics—he stated that he did not believe that there was a Supreme Being—and in order to prevent chaos that you should treat people as you wanted them to treat you—he stated that the worse thing to do to start chaos was killing—and that he couldn't conceive of killing".

Obviously, he did not hold any "religious conviction" as that phrase is traditionally used. The next inquiry is whether he claimed CO status on moral or ethical beliefs equivalent, for him, of a religion—a tenet of faith as strong as the guide of deity-worship in others. This equation is accepted in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), but that is not the present registrant's basic and dominant manifestation. His overriding motivation is the desire for *peace*. True, he believes that "to harm or destroy any human being" is "morally unpardonable and impossible" for him. This creed rests, he avers, on the wish to help another human being.

His thesis is not an inward personal peace but, rather, public tranquility. Incidentally, in this connection, to repeat, at first he averred he would accept non-combatant service as not offending his beliefs—later he explained he meant by that no service at all. In my view his objection "rests solely upon considerations of policy" which is not a basis for exemption. *Welsh,* supra, at 342–343, 90 S.Ct. at 1798. Consequently, I do not think he made out a prima facie case before the local board.

I would affirm the conviction.

WIDENER, Circuit Judge, joins in this dissent.